**Anne P. HENDRY, et al., Appellants,**

v.

**Francis J. PELLAND and Sadur, Pelland & Rubinstein, P.C., Appellees.**

**Nos. 94–7082, 94–7083 and 94–7084.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 14, 1995.

Decided Jan. 19, 1996.

Rehearing Denied March 5, 1996.

Ernest S. Hendry, Jr., appearing pro se, argued the cause, for appellants, with whom Anne P. Hendry and Judith V. Hendry, appearing pro se, were on the brief.

Ellen G. Draper, argued the cause, for appellees, with whom Joel M. Savits, Francis J. Pelland and Joel S. Rubinstein were on the brief.

Before: GINSBURG, ROGERS and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Three clients sued their former attorney and his law firm for breach of fiduciary duty, seeking punitive damages, compensatory damages, and disgorgement of the legal fees they had paid. The attorney's law firm coun-

terclaimed for unpaid legal fees. Applying District of Columbia law, we address three district court rulings made during the jury trial. First, because we agree with the district court that the record contained insufficient evidence for a reasonable jury to find that the attorney wilfully disregarded his clients' rights, we affirm the judgment denying the clients' request for punitive damages. Second, concluding that clients seeking disgorgement of legal fees for a breach of their attorney's fiduciary duty of loyalty need only prove that their attorney breached that duty, not that the breach injured them, and finding that the clients here presented sufficient evidence for a jury to conclude that their attorney breached his duty of loyalty, we set aside the district court's judgment for the lawyer and his law firm on the fiduciary duty claim. Finally, because the clients had a valid claim for breach of fiduciary duty, we set aside the court's ruling precluding them from using that breach as a defense to the law firm's counterclaim for unpaid fees. We therefore remand for a new trial on the clients' breach of fiduciary duty claim and the law firm's counterclaim for legal fees.

## I.

Five members of the Hendry family—the mother, her son and daughter, and the daughter's two infant children—owned an historic twenty-acre parcel of land in Arlington County, Virginia as tenants in common. The adult owners of the property, as well as the spouses of the son and daughter, who held rights of dower and curtesy, signed an agreement to sell the property for $4.5 million to a developer who planned to build a retirement home on the land. According to the agreement, if county officials failed to approve zoning changes needed to build the retirement home, the parties would undertake "good faith" negotiations to restructure the transaction. When county officials turned down the retirement home project, the developer proposed amending the agreement to provide for the construction of a 56–unit residential development. Under the proposed amendment, the $4.5 million price was unchanged. Although the son told the developer that he objected to the proposed amendment, his mother and the developer

signed the amendment while the son was away on vacation.

Discovering what his mother had done, the son and his wife retained Francis Pelland, a partner in the Washington, D.C. law firm of Sadur, Pelland & Rubinstein. The son explained to the lawyer that he was opposed to the residential development and concerned about his mother's mental capacity. Relying on the agreement's "good faith" clause, Pelland advised his clients not to oppose the residential development. Although the county ultimately approved the site plan for the residential development, all of the owners—now including the mother—refused to sell. Claiming breach of contract and unjust enrichment, the developer sued them in a Virginia state court.

While Pelland originally represented only the son and his wife, he represented all the owners of the property in defending the lawsuit. At a conference shortly before trial, the presiding judge told the parties that although the developer's contractual claims were meritless, the unjust enrichment claim had merit because the developer's efforts in securing county approval of the residential site plan increased the value of the Hendrys' property. He advised the litigants to negotiate a settlement on the unjust enrichment claim. Following Pelland's advice, the family settled with the developer for $1.5 million.

Unhappy with this result, three of the clients—the mother, the son, and his wife—sued Pelland and his law firm in the United States District Court for the District of Columbia based on diversity of citizenship, claiming both professional negligence and breach of fiduciary duty. The Hendrys sought identical relief on both claims: punitive damages; $2,069,000 in compensatory damages (representing the $1.5 million settlement plus amounts for interest, additional property taxes, and remodeling costs); and return of $86,538.62 in legal fees they had paid. The law firm counterclaimed for $37,-504.38 in unpaid legal fees.

Determining that District of Columbia law governed the Hendrys' claims against Pelland and his law firm, the district court issued the three rulings that are before us in

this appeal. After the Hendrys presented their case-in-chief, the district court granted Pelland's motion for judgment as a matter of law on punitive damages, explaining that "the evidence that has been presented in this case to date by no stretch of the imagination—at least my imagination—would warrant submitting the issue of punitive damages to this jury." At the close of all the evidence, the court granted Pelland's motion for judgment as a matter of law on the breach of fiduciary duty claim for compensatory damages and disgorgement of legal fees, finding that the Hendrys had failed to present any evidence as to the applicable standard of conduct. Finally, because the Hendrys no longer had a claim for breach of fiduciary duty, the court prohibited them from arguing breach of fiduciary duty as a defense to the law firm's counterclaim for legal fees. Accordingly, only the Hendrys' negligence claim (minus their request for punitive damages) and the law firm's counterclaim for legal fees went to the jury. The Hendrys lost on both counts. Entering judgment for Pelland and his law firm, the court awarded the firm its unpaid legal fees.

The Hendrys moved for a new trial on their fiduciary duty claim and the counterclaim for legal fees. Acknowledging that, contrary to its ruling at trial, the Hendrys had indeed presented sufficient evidence to establish that Pelland breached his fiduciary duty, the court nonetheless denied the motion for a new trial. Explaining that the jury's verdict on the negligence claim showed that the Hendrys' entire lawsuit was without merit, the district court ruled that they were not sufficiently prejudiced to be entitled to a new trial on either the fiduciary duty claim or counterclaim.

The Hendrys now appeal the district court's three rulings during trial and the denial of the motion for a new trial. Because we set aside the court's rulings during trial on the fiduciary duty claim and the counterclaim, thus entitling the Hendrys to a new trial on these claims, we need not address the district court's denial of the motion for a new trial.

## II.

■ We can affirm the district court's rulings only if we find "no legally sufficient evidentiary basis for a reasonable jury to find for" the Hendrys under applicable District of Columbia law. Fed.R.Civ.P. 50(a)(1). We review the district court's rulings *de novo*, considering the evidence in the light most favorable to the Hendrys and making all reasonable inferences in their favor. *See Mackey v. United States*, 8 F.3d 826, 829 (D.C.Cir.1993).

■ We agree with the district court that a reasonable jury could not have awarded punitive damages on the basis of the evidence presented at trial. Whether clients sue their attorney for professional negligence or breach of fiduciary duty, District of Columbia law allows punitive damages only if the attorney acted with "fraud, ill will, recklessness, wantonness, oppressiveness, [or] willful disregard of the [clients'] rights." *Dalo v. Kivitz*, 596 A.2d 35, 41 & n. 15 (D.C.1991) (quoting *Washington Medical Ctr., Inc. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)) (internal quotation marks omitted). At trial, the Hendrys maintained that they were entitled to punitive damages because the attorney was not "well advised" on certain points of law, that he did not "properly protect" the mother during discovery, and that he ignored advice from a legal assistant during settlement negotiations. Like the district court, we cannot imagine how these allegations could support punitive damages. If true, the Hendrys' allegations may well suggest that Pelland acted imprudently or incompetently, but they fall far short of showing the blatant wrongdoing necessary for a jury to infer that he acted either with deliberate malice or conscious disregard of his clients' rights. *See, e.g., Brown v. Coates*, 253 F.2d 36, 40 (D.C.Cir.1958) (finding punitive damages appropriate when real estate broker "executed a carefully planned and cleverly concealed method" to deprive homeowners of equity in their property); *Wagman v. Lee*, 457 A.2d 401, 405 (D.C.) (upholding award of punitive damages where attorney, acting as escrow agent for one potential purchaser of a house, used that person's deposit to enable another person to buy

the house), *cert. denied,* 464 U.S. 849, 104 S.Ct. 158, 78 L.Ed.2d 145 (1983).

Turning to the principal question before us—whether the district court erred in granting judgment to Pelland and his law firm on the Hendrys' claim for breach of fiduciary duty—we begin by noting the limited nature of the parties' arguments on appeal. First, in challenging the judgment, the Hendrys contend only that they presented sufficient evidence to justify a favorable jury verdict on their fiduciary duty claim *insofar as they sought disgorgement of legal fees.* They do not argue that they presented adequate evidence to support their $2 million claim for *compensatory damages.* Second, the parties agree that in order to prevail in a fiduciary duty claim for disgorgement of legal fees, clients need to present evidence establishing that their lawyer breached a fiduciary duty to them. The parties disagree about only two issues: whether the Hendrys presented such evidence; and whether, in addition to establishing that their attorney breached his duty, the Hendrys also needed to prove that the breach caused them injury.

■ As for the first issue, we agree with the Hendrys that their evidence that Pelland violated one of the rules of the District of Columbia Code of Professional Responsibility was sufficient to support their claim that he violated his common law fiduciary duty. While not holding that the ethical rules are co-extensive with an attorney's fiduciary duties, the District of Columbia Court of Appeals in *Griva v. Davison,* 637 A.2d 830 (D.C.1994), clearly ruled that "a violation of the Code of Professional Responsibility or of the Rules of Professional Conduct *can* constitute a breach of the attorney's common law fiduciary duty to the client." *Id.* at 846–47 (emphasis added). In particular, and significantly for this case, the court treated an alleged violation of Disciplinary Rule 5–105— prohibiting a lawyer from representing multiple clients "if the exercise of his independent professional judgment ... would be likely to involve him in representing differing interests" unless "it is obvious that he can adequately represent the interest of each [client] and ... each consents to the representation after full disclosure," D.C.CODE OF PROFESSIONAL RESPONSIBILITY DR 5–105(B) to (C)—as equivalent to a breach of an attorney's fiduciary duty. *See Griva,* 637 A.2d at 837–41, 846–48. The *Griva* court's ruling that a conflict of interest may violate not only ethical rules, but also an attorney's common law fiduciary duties, is far from novel. *See American–Canadian Oil & Drilling Corp. v. Aldridge & Stroud, Inc.,* 237 Ark. 407, 373 S.W.2d 148, 150–51 (1963); *Kidney Ass'n of Oregon, Inc. v. Ferguson,* 315 Or. 135, 843 P.2d 442, 446–47 (1992). As Pelland recognizes, a basic fiduciary obligation of an attorney is the duty of "undivided loyalty," which is breached when an attorney represents clients with conflicting interests. Brief for Appellees at 9–10 (citing 1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE, § 11.1, at 633 (3d ed. 1989)).

The Hendrys' expert testified that Pelland violated DR 5–105 because his representation of all five owners of the property put him in the "impossible" position of serving individuals with conflicting interests: the mother, anxious to reach a settlement with the developer that would allow her to keep a house on the land; the son and the daughter, opposed to the plan to build a residential development because it would destroy the trees on the property; and the two infant grandchildren, whose primary interest was in maximizing the long-term value of the property. The son testified that the lawyer never discussed the possible conflicts of interest with him. Viewed most favorably to the Hendrys, this evidence was sufficient for a reasonable jury to find that Pelland violated DR 5–105, thereby breaching his fiduciary duty of loyalty.

■ We also agree with the Hendrys that, to the extent they sought disgorgement of legal fees, they needed to prove only that Pelland breached his duty of loyalty, not that his breach proximately caused them injury. Although we have found no District of Columbia cases precisely on point, courts in other jurisdictions have held that clients must prove injury and proximate causation in a fiduciary duty claim against their lawyer if they seek *compensatory damages,* not if, as here, they seek only *forfeiture of legal fees.* Compare *Buch v. Holliday,* 803 S.W.2d 56, 60 (Mo.Ct.App.1990) (ruling that clients are

required to show injury and causation in suit for compensatory damages) *with Gilchrist v. Perl*, 387 N.W.2d 412, 415 (Minn.1986) (holding that clients are not required to show injury in seeking forfeiture of fees); RESTATEMENT (SECOND) OF AGENCY § 469 cmt. a (1958) (stating that an agent is not entitled to compensation for disloyal conduct, even if no harm to principal); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. d (Tentative Draft No. 4, 1991) (noting that forfeiture may be appropriate absent a showing of harm). Even courts that sometimes *do* require a showing of injury and causation in claims seeking only forfeiture of legal fees have stated that it is not necessary when the clients' claim is based, again as here, on a breach of the duty of loyalty. *See, e.g., Frank v. Bloom*, 634 F.2d 1245, 1257–58 (10th Cir.1980) (stating that forfeiture is appropriate, absent showing of injury, where attorney represents clients with direct conflict of interest).

Recent opinions of the District of Columbia Court of Appeals lend support to this distinction between claims for compensatory damages and claims for disgorgement of legal fees. In one case where clients sought *compensatory damages*, the court described the elements of the clients' negligence claim as including "a causal relationship between the violation and the harm complained of," *Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C.1994); the court stated that its disposition of the negligence claim "applie[d] with equal force to the [clients'] claim of *breach of fiduciary duty*," *id.* at 1120 n. 6 (emphasis added). In another case, where the clients sought not compensatory damages but *forfeiture of legal fees,* the court relied upon decisions where the clients did *not* need to prove injury or causation. *See Griva*, 637 A.2d at 847 (citing *Jeffry v. Pounds,* 67 Cal.App.3d 6, 136 Cal. Rptr. 373, 377 (1977); *In re Hansen,* 586 P.2d 413, 417 (Utah 1978)).

■ The different treatment of compensatory damages and forfeiture of legal fees also makes sense. Compensatory damages make plaintiffs whole for the harms that they have suffered as a result of defendants' actions. *See* RESTATEMENT (SECOND) OF TORTS § 903, cmt. a (1977). Clients therefore need

to prove that their attorney's breach caused them injury so that the trier of fact can determine whether they are entitled to any damages. Forfeiture of legal fees serves several different purposes. It deters attorney misconduct, a goal worth furthering regardless of whether a particular client has been harmed. *See Gilchrist,* 387 N.W.2d at 416; RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. b (Tentative Draft No. 4, 1991) (noting that forfeiture deters misconduct). It also fulfills a long-standing and fundamental principle of equity—that fiduciaries should not profit from their disloyalty. *See, e.g., Woods v. City Nat'l Bank & Trust Co.,* 312 U.S. 262, 268–69, 61 S.Ct. 493, 497–98, 85 L.Ed. 820 (1941); RESTATEMENT (SECOND) OF AGENCY § 469 cmt. a (1958). And, like compensatory damages, it compensates clients for a harm they have suffered. *See Gilchrist,* 387 N.W.2d at 416; *Kidney Ass'n of Oregon, Inc.,* 843 P.2d at 447. Unlike other forms of compensatory damages, however, forfeiture reflects not the harms clients suffer from the tainted representation, but the decreased value of the representation itself. Because a breach of the duty of loyalty diminishes the value of the attorney's representation as a matter of law, some degree of forfeiture is thus appropriate without further proof of injury. *See Gilchrist,* 387 N.W.2d at 416–17.

We thus conclude that, under District of Columbia law, clients suing their attorney for breach of the fiduciary duty of loyalty and seeking disgorgement of legal fees as their sole remedy need prove only that their attorney breached that duty, not that the breach caused them injury. Because the Hendrys presented evidence that Pelland breached his duty of loyalty by violating DR 5–105, they were entitled to have their fiduciary duty claim for disgorgement of legal fees go to the jury. The district court therefore erred in granting judgment for Pelland and his firm.

In reaching this conclusion, we have not addressed two issues of District of Columbia law relating to the Hendrys' fiduciary duty claim. Because the testimony regarding DR 5–105 is adequate to support our holding, we have not considered whether violations of two other ethical rules mentioned by the

Hendrys' expert—DR 6–101, requiring an attorney to act competently, and DR 7–101, requiring an attorney to represent clients zealously, *see* D.C.CODE OF PROFESSIONAL RESPONSIBILITY DR 6–101, 7–101—can also constitute breaches of an attorney's common law fiduciary duties. Nor have we addressed the extent of forfeiture to which the Hendrys might be entitled if, at a new trial, they succeed in proving that Pelland breached his duty of loyalty. Some courts have suggested that attorneys must forfeit all fees earned in their tainted representation of a client, *see Silbiger v. Prudence Bonds Corp.,* 180 F.2d 917, 920–21 (2d Cir.) (dictum), *cert. denied,* 340 U.S. 831, 71 S.Ct. 37, 95 L.Ed. 610 (1950); *American–Canadian Oil & Drilling Corp.,* 373 S.W.2d at 150 (dictum); others have ruled that lawyers must forfeit all fees earned in such representation *after* the breach occurred; *see Financial Gen. Bankshares, Inc. v. Metzger,* 523 F.Supp. 744, 773 (D.D.C.1981), *vacated on other grounds,* 680 F.2d 768 (D.C.Cir.1982); *Jeffry,* 136 Cal. Rptr. at 377; while still others have held that the extent of forfeiture depends upon the facts and circumstances of the case, *see Gilchrist,* 387 N.W.2d at 416–17 (holding that clients are always entitled to nominal damages, but full forfeiture requires evaluation of several factors); *Kidney Ass'n of Oregon, Inc.,* 843 P.2d at 446–47 (discussing reduction as well as outright denial of fees); *Perez v. Pappas,* 98 Wash.2d 835, 659 P.2d 475, 480 (1983) (complete forfeiture may be available in "appropriate" circumstances).

■ The final issue in this case—the court's ruling on the law firm's counterclaim—turns on the proposition that clients may defend a claim by their lawyer for unpaid legal fees by proving that their attorney breached a fiduciary duty. *See Griva,* 637 A.2d at 847 (citing *Jeffry,* 136 Cal.Rptr. at 377, in which the court ruled that the client could defend his lawyer's suit for unpaid fees by arguing that the lawyer breached his fiduciary duty); 1 MALLEN & SMITH, *supra,* § 11.24, at 698–99. Because the Hendrys presented sufficient evidence for a jury to find that Pelland violated his fiduciary duty, the district court erred in prohibiting them from using this argument as a defense to the counterclaim.

## III.

We affirm the district court's ruling on punitive damages, vacate the court's ruling granting judgment as a matter of law to Pelland and his firm on the Hendrys' fiduciary duty claim, and vacate its ruling and judgment on the counterclaim for legal fees. We remand to the district court for a new trial on the Hendrys' fiduciary duty claim and on the law firm's counterclaim.

*So ordered.*