**BERKELEY LIMITED PARTNERSHIP,**
**Plaintiff,**

v.

**ARNOLD, WHITE & DURKEE,**
**et. al., Defendant.**

**Civil Action No. AW–98–414.**

United States District Court,
D. Maryland.

Oct. 23, 2000.

---

Richard I. Chaifetz, Lawrence H. Schwartz, Columbia, MA, Sherman L. Cohn, Washington, DC, for plaintiff.

Thomas M. Buchanan, Gordon A. Coffee, Robert A. Berger, Michael T. Dyson, Winston & Strawn, Washington, DC, for defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently before the Court is Plaintiff Berkeley Limited Partnership's ("BLP") third Motion for Partial Summary Judgment as to their complaint and Defendant Arnold, White, & Durkee ("AW & D"), et. al's second Motion for Summary Judgment of Plaintiff's complaint. Oppositions were filed by both parties, and replies were filed by Plaintiff and Defendant.[1] A hearing was held before this Court on September 27, 2000. For the reasons discussed below, the Court will grant Plaintiff's motion in that Defendant's representation of Intel violated rule 1.7 of the District of Columbia Rules of Professional Conduct. The remainder of the Plaintiff's motion will be denied. Further, this Court will grant Defendant's motion with respect to NCR, finding that the Plaintiff has offered no evidence to show that there was a conflict of interest in AW & D having NCR and BLP as clients. Further, the Court finds that the statute of limitations on claims against NCR began in 1987. Since those claims were not brought until 1997, they are barred by the statute of limitations. The Court will deny the remainder of the Defendant's motion.

## BACKGROUND

The case involves Plaintiff's claims of legal malpractice by Defendants, AW & D

---

1. Both Plaintiff and Defendant submitted unsolicited briefs after the hearing. For purposes of this opinion, they have been admitted, but not considered.

and individually named attorneys. The pending matter arouse out of a contract for legal services between AW & D and BLP. The Complaint alleges that BLP, a Maryland limited partnership, hired and entered into a contingent fee agreement with the Texas law firm of AW & D to represent it in connection with claims of patent infringement against the computer company, IBM. BLP contends that AW & D failed to disclose its representation of clients adverse to BLP. Plaintiff asserts that AW & D's simultaneous representation of BLP and two other computer manufacturers,[2] which are alleged to have also infringed upon their patent, created a conflict of interest that AW & D never disclosed.

Plaintiff brought suit alleging two claims of legal malpractice and one count of breach of fiduciary obligations. In their third Motion for Partial Summary Judgment, Plaintiff asks this Court to find, as a matter of law, that: (1) AW & D's simultaneous representation of BLP, Intel, and NCR constitutes a conflict of interest (thus violating D.C. Rules of Professional Conduct 1.7), (2) that Arnold Berkeley, general partner of BLP did not learn of AW & D's conflicts until June 1996, thus starting the clock on the statute of limitations; and (3) award Plaintiff a disgorgement of the legal fees it paid to AW & D based on the fact that Plaintiff has shown that Defendant breached their duty of loyalty under D.C. Rules of Professional Conduct 1.7.

Defendant counters with their second Motion for Summary Judgment on all counts. Defendants' argument is two-fold. Plaintiff's claims are barred by the statute of limitations because BLP had actual notice of AW & D's representation of Intel and NCR in 1987, when Donald Jefferson, then limited partner in BLP, was informed by Defendants. Secondly, Plaintiff has failed to provide expert witness testimony to establish a standard of care for the trier

of fact. Therefore, Plaintiff's claims for duty of care and for compensatory damages cannot survive summary judgment.

## STANDARD FOR SUMMARY JUDGMENT MOTION

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in its favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted). Accordingly, in determining whether genuine and material factual disputes exist, the Court has reviewed the memorandums and the exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

**2.** During the time in question, AW & D had also been retained, presumably on unrelated matters, by the Intel Corporation and the NCR Corporation, both of which manufactured computer hardware for IBM compatible computers.

## DISCUSSION

### I. *Application of District of Columbia Law*

■ This case originated in the District Court for the District of Columbia. It was transferred to this Court under 28 U.S.C. § 1404(a). Where a case is transferred under this section, the court must apply the rules of the court from where the matter was transferred. *Lewis v. Capital Mortg. Investments,* 78 F.R.D. 295 (D.C.Md.1977). Although BLP was formed under Maryland law, the basis for the present claim, the Employment and Contingency Fee Contract, signed July 28, 1985, states that any controversy arising out of, or relating to, this contract shall be decided under the jurisdiction of the United States District Court for the District of Columbia. Therefore, this Court shall apply District of Columbia law to the present case.

### II. *Whether Plaintiff's Claims are barred by the Statute of Limitations*

#### A. Intel

■ The present suit was filed thirteen years after AW & D began representing Plaintiff and Intel. The statute of limitations in this case is three years. Defendant began their representation of Plaintiff in 1984, and their representation of Intel in late 1984. Plaintiff's claim against IBM was settled in 1988. Plaintiff argues that their claim does not begin to accrue until June 1996 when Donald Jefferson and Arnold Berkeley allegedly had a conversation reminiscing over the old days. Jefferson was telling Berkeley that he thought they should have gotten more out of IBM as a result of their 1988 settlement. Jefferson expressed the opinion that had AW & D not represented Intel, that more of BLP's claims would have remained in the complaint against IBM. Berkeley, allegedly got agitated because this was the first time he had heard that AW & D represented Intel. As a result of the conversation, Plaintiff filed suit against AW & D in 1997.

There is one occasion that is undisputed by both parties where Mr. Jefferson, as well as, John Myntti, both limited partners in the BLP limited partnership, were told directly by AW & D of the potential conflict of interest between BLP and Intel. Both Myntti and Jefferson did not tell Berkeley, the general partner of the BLP limited partnership, because they both assumed that he was aware of this. (Plaintiff's Ex. 38, ¶ 5; Ex. 40, pg. 99, line 9.) This conversation occurred in 1987, 10 years before the lawsuit was filed. It is uncontroverted that Mr. Jefferson and Mr. Myntti, as limited partners, had knowledge of AW & D's representation of both Plaintiff and Intel. Defendant argues that the knowledge of a limited partner imputes that knowledge to the whole limited partnership.

With no case law on point, both parties cite to treatises and case law on partnerships. "Since limited partners rarely have the ability to act for the firm, it seems that their knowledge or notice should not be imputed to the firm. Nonetheless, several courts have made the imputation in situations where they thought the limited partner could act for the firm." A. Bromberg & L. Ribstein, *Partnership,* Supp.1995, Section 14.06(b). (Citations omitted). Plaintiff submits a declaration from Jefferson in which he states that he was simply serving as a consultant to the litigation and that he had no ability to act within the limited partnership. Plaintiff's exhibit 72, p. 2. Under District of Columbia law, a limited partner can only hold the limited partnership liable to a third party if they participate in the control of the business. See Uniform Limited Partnership Act of 1987, D.C.Code Ann. § 41–433 (1981). Consulting with the general partner on matters, including the business of the limited partnership, is not participation in the control of the limited partnership. D.C.Code Ann. § 41–433(b)(2) (1981). Furthermore, under D.C. law, the Limited Partnership Act is silent as to whether a limited partner is considered a partner for

the purpose of knowledge or notice. D.C.Code Ann. § 41–151.1 (1981).

Defendant relies heavily on a California case which states that knowledge held by a limited partner is imputed on to the limited partnership. (*Bedolla v. Logan and Frazer*, 52 Cal.App.3d 118, 125 Cal.Rptr. 59 (1975)). However, the California law for which the decision was based on has since been repealed. (Although the case has not been overturned.) The California court reached the decision, in part, because the limited partner had the opportunity to bring a derivative action against the defendant. District of Columbia law does not provide for that remedy, specifically.

Defendant fails to present a convincing argument that Mr. Jefferson or Mr. Myntti as limited partners, had the ability to act on behalf of BLP. Because neither District of Columbia courts nor the D.C.Code have addressed the specific issue of whether the limited partners knowledge can be imputed to the partnership, this court must look at additional sources. The purpose of limited partnerships has traditionally been to treat limited partners as investors or stockholders. A limited partners' liability to third parties is no more than the amount that they have invested. In an effort to clarify a limited partner's liability for actions of the limited partnership and their own actions, the proposed revision of the Revised Uniform Limited Partnership Act (RE–RULPA) specifically addresses knowledge and notice of a limited partner. Under the RE–RULPA, a limited partner's knowledge or notice of a fact relating to the limited partnership is not effective as knowledge by, notice to, or receipt of a notification by the limited partnership. (§ 103(h)). Although the RE–RULPA has not been codified by D.C., it represents the trend of limited partnership law. By not holding the limited partnership liable for the limited partners knowledge, the RE–RULPA is attempting to codify the purpose of being a limited partner. Due to the trend in limited partnership law, as shown by the RE–RULPA, and Mr. Jefferson and Mr. Myntti's role in BLP, this Court has determined that Jefferson and Myntti's knowledge of AW & D's representation of Intel is not imputed to BLP.

Defendant argues that there are other instances when AW & D allegedly informed Mr. Berkeley, personally, of their representation of Intel. These instances include an alleged trip to the Intel litigation "war room" and a conversation which allegedly took place in a rental car during a weekend strategy meeting concerning the IBM suit. Plaintiff has submitted a significant amount of evidence to place these instances in dispute through deposition testimony and sworn declarations. This Court will not further rule as to whether Mr. Berkeley had actual knowledge of AW & D's representation of Intel because there is material fact in dispute and therefore the issue is not appropriate for summary judgment. The issue of whether Mr. Berkeley had knowledge of AW & D's representation before the 1996 conversation with Mr. Jefferson, so as to trigger earlier the statute of limitations, will be left for the trier of fact to decide.

## B. NCR

■ Defendant provides evidence of two times that an attorney from AW & D allegedly notified Arnold Berkeley, personally, of their representation of NCR. In 1987, after litigation was filed against IBM, AW & D received a letter from IBM's counsel regarding discovery issues. One of the issues presented was whether AW & D had done any research on their own of NCR since it was one of their clients and NCR could be a potential defendant in the future since they produced computers that were considered IBM "clones." In his deposition, attorney Edward Goldstein stated that it has always been his practice to forward such letters to the client, either by fax or by hand delivery the next time he saw them. However, Mr. Goldstein cannot recall specifically giving Berkeley this letter nor does he have

any addition proof (fax cover sheet, etc) of giving this letter to Berkeley. Secondly, Gordon White states in his deposition that he recalls a conversation in 1987 about where to file the IBM action. The Eastern District of Virginia is suggested because of its moniker for being the "rocket docket." Attorney Edward Goldstein suggests that the Eastern District of Virginia also has a lower standard for establishing minimal contacts. Mr. Goldstein knew this because he made a similar determination when filing the case on behalf of NCR. ( Defendants' Ex. 7, pg. 49.) White remembers Goldstein specifically talking about NCR as a client to Berkeley.

Plaintiff offers no credible evidence in response. Their only attempt at creating a dispute as to the facts is with a declaration by Donald Jefferson whereby he says that he never heard Mr. Goldstein discuss AW & D's representation of NCR in his presence. This, in no way, refutes Defendant's evidence because Mr. Goldstein would not have sent or hand delivered the IBM letter to Jefferson and in Mr. Goldstein deposition he states that Berkeley was the only one from BLP present during the conversation. (Defendant's Ex. 7.) Because Plaintiff is unable to rebut Defendant's evidence as to Berkeley's notice the Court believes that Berkeley had actual notice of AW & D's representation of NCR. Therefore, the statute of limitations in this case began to run in 1987. Since, claims regarding NCR were not filed until 1997, they must be dismissed due to the running of the statute of limitations.

## III. AW & D's concurrent representation of Intel, NCR and BLP.

### A. Intel

■ District of Columbia RPC Rule 1.7 defines conflicts of interest. Under section b(2) a conflict of interest includes "such representation that will be or is likely to be adversely affected by representation of another client." The evidence shows that this was the case with AW & D's representation of BLP and Intel. IBM computers were using Intel chips that Berkeley had theorized contained information which infringed upon his patent.[3] In his statement to Jefferson, Mr. White told Jefferson in 1987 that certain claims could not be brought against IBM because they involved Intel and that would present AW & D with a conflict of interest. While it is disputed whether Intel did infringe upon Berkeley's patent, it is clear from the evidence that claims could have been brought against IBM for a trier of fact to decide. However, those claims were not brought, in part because AW & D represented Intel. AW & D's representation of BLP and Intel at the same time constitutes a conflict of interest as a matter of law. Therefore as to the issue of liability only, Defendant's representation of both BLP and Intel constitutes a conflict of interest pursuant to D.C. RPC rule 1.7.

### B. NCR

■ Plaintiff advances many of the same arguments to show AW & D had a conflict of interest in representing BLP and NCR at the same time. However, there are many differences. Again, it is undisputed that AW & D represented both clients at the same time. Plaintiff argues that NCR also infringed upon Berkeley's patent because it was an IBM clone. A lot of time is spent by both parties as to whether or not NCR did in fact infringe upon the Berkeley patent. However, that is not the issue here. The issue is whether AW & D's representation of both BLP and NCR rose to the level of adversely affecting BLP and therefore created a conflict of interest. The Court finds that AW & D's representation of NCR did not adversely affect BLP and their lawsuit against IBM.

---

**3.** The evidence also shows that Berkeley had a wider view that everyone in the computer industry was infringing upon his patent, whereas AW & D as well as Jefferson, to some extent, held the view that Berkeley's patent was much narrower in scope.

With Intel and BLP, the conflicts between the two parties in light of the IBM suit were discussed between the Plaintiffs and the attorneys. At one point Berkeley even said that they should go after Intel in the IBM suit. However, no one from BLP suggested that during the IBM suit, that NCR be included as well. In fact Jefferson himself states in his deposition that prior to this litigation, he was not aware of the NCR products that allegedly were infringing upon the patent and prior to the present litigation there was never an investigating done by Jefferson as to whether NCR did allegedly infringe upon the patent. (Defendants' Ex. 8, pg. 376, 379.) At the time of the IBM litigation, BLP had no intention of specifically going after NCR. BLP did hope to go after IBM "clones" which arguably could include NCR, but they were never identified as such as the time of AW & D's representation of BLP. Plaintiff presents no evidence of AW & D rejecting to bring a claim against NCR for any reason. Even if AW & D had rejected to bring a claim against NCR, BLP, according to the employment and contingency fee contract, was free to retain another attorney to sue that infringer. (Plaintiff's Ex. 6, pg. 10 of the agreement.) Therefore, BLP could not have been adversely affected by AW & D's representation of NCR, because they could have used other counsel. Based on the fact that Defendant has shown sufficient evidence that their representation of both BLP and NCR does not represent a conflict of interest, this Court determines as a matter of law that there was no conflict of interest in AW & D representing both NCR and BLP.

## IV  Disgorgement of the legal fees paid to AW & D

Plaintiff relies on a District of Columbia Law, which states that clients suing their attorney for breach of the fiduciary duty of loyalty (which is included in the Plaintiff's claim of breach of fiduciary obligations) and seeking disgorgement of legal fees as their sole remedy need prove only that their attorney breached that duty. *Hendry v. Pelland*, 73 F.3d 397 (D.C.Cir.1996). As discussed above, Plaintiff has shown that AW & D breached their common law duty to Plaintiff by representing both BLP and Intel in violation of rule 1.7. *Griva v. Davison*, 637 A.2d 830 (D.C.1994), (holding that a violation of the code of professional responsibility can constitute a breach of the attorney's common law fiduciary duty to the client.). However, Plaintiff has not shown a breach of duty by AW & D with their representation of NCR because they have failed to show a breach in the common law duty, through violation of a code of professional responsibility, or by the use of expert testimony.

■ However, the analysis does not end there. The *Hendry* court stated that disgorgement of legal fees is appropriate as a remedy when it is the Plaintiff's sole remedy. Plaintiff, in the present case, has sought an additional remedy in the form of compensatory damages. Plaintiff is not entitled to both. Compensatory damages are intended to make the plaintiff whole for any losses they suffered. Whereas, disgorging the legal fees is in the nature of a punitive measure designed to discourage behavior and punish attorneys for their violations. While compensatory damages are requested, the Court notes that it may be ultimately concluded that compensatory damages are speculative without the presentation of expert testimony as to the extent of the alleged loss suffered by the Plaintiff, assuming, of course, that the Plaintiff prevails on the issue of statute of limitations on counts I and II. At any rate, since the Plaintiff seeks compensatory damages the *Hendry* case does not apply here. Therefore, the Plaintiff can not be awarded the disgorgement of legal fees at this stage of the litigation.

## V  Conclusion

For the reasons discussed in this memorandum opinion, the Court will grant Plaintiff's motion to the extent that Defen-

dant's representation of Intel violated rule 1.7 of the District of Columbia Rules of Professional Conduct and thus constituted a conflict of interest. The Court, however, will deny the Plaintiff's motion on the issues of when the statute of limitations began with respect to their claim against Intel and on the issue of disgorgement of legal fees paid to AW & D. Further, this Court will grant Defendant's motion with respect to NCR, finding that the Plaintiff has offered no evidence to show that there was a conflict of interest in AW & D having NCR and BLP as clients. Further, the Court finds that the statute of limitations on claims against NCR began in 1987. Since those claims were not brought until 1997, they are barred by the statute of limitations. The Court will deny the remainder of the Defendant's motion, leaving a finder of fact to determine when the statute of limitations was triggered and, if so, the damages suffered by Plaintiff, as to Intel, only, in counts I and II. The finder of fact, also, will also have to determine the damages, if any, suffered by the Plaintiff as to count III, with respect to Intel, only.