In re Frances Sue RANDOLPH–BRAY;
Teresa Arnold, Appellant.

No. 06–PR–919.

District of Columbia Court of Appeals.

Submitted Sept. 28, 2007.
Decided Feb. 21, 2008.

Steven M. Schneebaum, Washington, DC, was on the brief for appellant.

Before KRAMER and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

THOMPSON, Associate Judge:

On March 10, 2005, the Superior Court removed appellant Teresa Arnold as guardian/conservator of the estate of Frances Sue Randolph–Bray, Arnold's grandmother. On January 9, 2006, the court entered a further order holding Arnold liable for attorney's fees billed by the lawyer that the court appointed to act as successor guardian/conservator. Arnold filed this appeal after the court denied her motion for reconsideration of that sanctions order. We agree that the court should have reconsidered and vacated its order sanctioning Arnold. We therefore reverse.

## I.

On July 10, 1996, the Superior Court Probate Division first appointed Arnold to serve as guardian and conservator for Randolph–Bray, who was then 76 years old and suffering from dementia. Over the years, Randolph–Bray became increasingly disoriented and uncooperative, became a colostomy patient, and came to need assistance with every aspect of personal hygiene. Arnold took Randolph–Bray into her home, and for most of Arnold's period of guardianship and conservatorship, cared for Randolph–Bray full-time, feeding, bathing, dressing and transporting her, and administering her medications. The court issued orders approving compensation to Arnold for her caregiving services, at the rate of "$50 per day on which she provides care to the Ward."

As conservator, Arnold was required to "account to the court ... at least annually on the anniversary date of appointment, and at other times as the court may direct." D.C.Code § 21–2065(a). As guardian, she was required to "[r]eport in writing the condition of the ward and of the ward's estate that has been subject to the guardian's possession or control, as ordered by the court on petition of any person interested in the ward's welfare or as required by court rule, but at least semi-annually." D.C.Code § 21–2047(5). Because of Arnold's failure to file reports when due on a number of occasions, the court required her to show cause why she should not be removed as guardian/conservator and, in October 2004, removed her as guardian and conservator for her delinquency. The court subsequently set aside that removal after Arnold and the court-appointed successor fiduciary, Brian Kass, Esq., filed a joint-petition explaining that Arnold had not received notice of the hearing. The court entered its March 10, 2005 removal order after Arnold again failed to timely file a guardianship report. The court once again appointed Kass as successor guardian/conservator.

Randolph–Bray died on April 25, 2005. The Superior Court appointed an Auditor–Master to determine the final accounting of Randolph–Bray's estate. Kass, as successor guardian/conservator, undertook to marshal the assets and records pertaining to the ward Randolph–Bray. At one point he informed the Auditor–Master that he was unable to "obtain the necessary financial documents from the removed fiduciary." The Superior Court docket sheet shows that on May 10, 2005, Kass nevertheless filed his Conservator's Final Account and Final Semi–Annual Guardianship Report on Behalf of the Removed Guardian Teresa Arnold. On September 19, 2005, Kass also filed a fee petition with the Auditor–Master, seeking $4,702.74 in

hourly-rate fees and expenses for his (and his associates') work.

The Auditor–Master concluded that Arnold had not properly accounted for $12,493.83 of Randolph–Bray's assets and was therefore liable to Randolph–Bray's estate for that amount. In its January 9, 2006 order, the Superior Court accepted several of Arnold's exceptions to the Auditor–Master's report and accordingly reduced the liability amount found by the Auditor–Master from $12,493.83 to $8,431.42.[1] In addition, apparently *sua sponte*, the court augmented that award by $6,014.56, stating that, "to the extent that Ms. Arnold's failing lead [*sic*] to the appointment and services of the successor fiduciary, Brian L. Kass, a judgment for his fees, which are undisputed, is entered against Ms. Teresa Arnold and Fidelity and Deposit Company of Maryland [Arnold's surety], jointly and severally...."

On January 20, 2006, Arnold filed a motion pursuant to Superior Court Probate Division Rule 430(a),[2] asking the court to reconsider the portion of the January 9, 2006 order holding her liable for payment of Kass's fees, arguing that, pursuant to Superior Court Probate Division Rule 308,[3] the fees were the responsibility of the estate. In an order dated February 24, 2006, the court denied the motion for reconsideration. The court reasoned that Arnold "breached her fiduciary duties by failing to comply with the accounting requirements of the court. As a result the court had to appoint an attorney to complete her work. It would be an injustice to the estate to charge [it] for the attorney's fees that were merely generated by the breach of [Arnold's] fiduciary duty."[4] The court explained that in holding Arnold personally liable for Kass's fees, it "was not imposing a penalty or a fine," but "exercising its authority in equity" to "impos[e] a

1. The Auditor–Master specifically recognized Arnold's entitlement to payment for the caregiver services she continued to provide to Randolph–Bray during the period from March 10 to April 25, 2005, when Kass, and not Arnold, was guardian/conservator. By contrast, the Auditor–Master found that Arnold was not entitled to payment for caregiving services for certain days when Arnold was still guardian/conservator, but Randolph–Bray lived with her son rather than with Arnold. The Auditor–Master also acknowledged a hospice report that Arnold "provided the ward with excellent care until she passed."

2. Rule 430(a) provides that:

   Any person who participated in the determination of a trial court ruling, order, judgment or decree, in any matter not initiated by complaint and summons in a decedent's estate proceeding, may seek reconsideration thereof only on the following grounds: (1) the Court failed to consider a material fact or law upon which such matter was based; (2) the emergence of new material facts that could not have been discovered with due diligence or a change of law not

previously brought to the Court's attention; (3) there was no discernible basis or reason given for the Court's order; (4) fraud (whether denominated intrinsic or extrinsic), misrepresentation, or other misconduct of another person or entity interested in the proceeding; (5) mistake, inadvertence, surprise or excusable neglect; (6) the order pertains to a matter or matters on which no other interested person or party entered an exception, objection or otherwise contested the issues disposed of therein; or (7) any other reason justifying relief from the operation of the order. The motion shall be filed not later than 30 days after entry of the ruling, order, judgment or decree and prior to the entry of the order approving the final account.

3. *See* Superior Court Probate Division Rule 308 (2007).

4. D.C.Code § 21–2063 provides that a "conservator, in relation to powers conferred by this subchapter, or implicit in the title acquired by virtue of the proceeding, shall act as a fiduciary and observe the standards of care applicable to trustees."

sanction on the removed fiduciary." The court acknowledged that Arnold's "lack of sophistication" in accounting for estate assets may have led to her omissions, but stated that "justice and equity would not permit that for such mitigating factors[,] the estate be held responsible for such expenditures."

Arnold filed a notice of appeal on March 17, 2006, challenging the February 24, 2006 order denying her motion for reconsideration.

## II.

Arnold argues that she was entitled to "relief from operation of the [January 9, 2006] order," Superior Court Probate Division Rule 430(a)(7), because she cannot properly be held liable for the fees of the successor guardian/conservator. She relies on our case law holding that a trial court may not sanction a party by requiring payment of (another party's) attorney's fees absent a finding of bad faith. *See, e.g., Oliver v. Mustafa*, 929 A.2d 873, 879 (D.C.2007), and cases cited therein. However, those authorities are inapposite in the circumstances presented here. The court did not hold Arnold liable for the attorney's fees of an adverse party (the circumstance addressed in *Oliver* and cases cited therein) or for attorney's fees *qua* attorney's fees.[5] Rather, the court charged her with liability for payment of compensation and costs of the successor guardian/conservator "generated by the breach of [Arnold's] fiduciary duty"; it is only incidental that the successor guardian/conservator is an attorney who billed for his time at his established hourly rate.

■ Arnold also relies on provisions of the Probate Code and Probate Division Rules establishing generally that a ward's estate is responsible for payment of compensation for services rendered in connection with a guardianship or protective arrangement. *See* D.C.Code § 21–2060; Superior Court Probate Division Rule 308. But while the general rule is that a ward's estate is to be charged for guardianship/conservatorship expenses, a conservator or other fiduciary may be liable for additional costs incurred by the estate as a result of the conservator's breach of fiduciary duty. *See In re Estate of Elkins*, 692 A.2d 910, 912 (D.C.1995) (holding a conservator liable for tax penalties and interest charges that accrued as a result of his failure to file tax returns for the estate); *see also Jones v. Hagans*, 634 A.2d 1219, 1225–26 (D.C.1993) (citing law generally holding a trustee liable for penalties accrued due to the trustee's error, and remanding the case to the trial court to determine whether estate tax penalties and any interest charges resulted from a violation of the personal representatives' duty, and if so, "to delete those charges against the estate").

■ Nevertheless, we are constrained, for several reasons, to conclude that the Superior Court erred in denying Arnold's motion for reconsideration of the January 9, 2006 sanctions order. First, the January 9 order followed upon the Auditor–Master's recommendation that the court enter a judgment against Arnold for the "balance to be accounted for" as identified in the Auditor–Master's report, which amount did not include Kass's fees. The

---

5. *Cf. SPM Corp. v. M/V Ming Moon*, 22 F.3d 523, 525 (3d Cir.1994) (noting that "there are some judicially created exceptions to [the] general rule" that a prevailing party is generally not entitled to an award of attorney's fees, including the exception that "allows attorneys' fees to an indemnitee as against his indemnitor—not as attorneys' fees *qua* attorneys' fees, but as part of the reasonable expenses incurred in defending the claim") (citation and quotation marks omitted).

court held a hearing on the Auditor–Master's findings, but it appears that Arnold was afforded no notice that the court would consider requiring her to pay Kass's fees.[6] Yet, D.C.Code § 21–2031(e), requires, *inter alia*, that notice in any guardianship or conservatorship proceeding "explain the purposes, procedure, and significance of the pleading or hearing that the notice concerns. . . ." We think that due process as well demanded that Arnold receive notice of the possible sanction and a meaningful opportunity to be heard regarding it before it was imposed. *See In re Estate of Delaney*, 819 A.2d 968, 991 (D.C.2003) ("[D]ue process contemplates a fair process or procedure which requires at least an opportunity to present objections to the proposed action to a fair, neutral decision-maker when the government undertakes to deprive an individual of property"); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 n. 22, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("the basic protection against 'judgments without notice' afforded by the Due Process Clause is implicated by civil penalties") (citation and emphasis omitted).

To be sure, we have recognized that a motion for reconsideration, even if denied by the Superior Court, "may provide adequate 'antidote' for sanctions imposed without prior notice or hearing." *In re Bolden*, 719 A.2d 1253, 1253 n. 5 (D.C. 1998) (citing *Brady v. Fireman's Fund Ins. Cos.*, 484 A.2d 566, 568–69 (D.C.1984)) ("[a]lthough we agree that the trial court erred in failing to give him notice, we conclude that the trial court's error was cured when appellant filed, and the court fully considered, his Rule 60(b) motion"). But ·in the case where we reached that conclusion, we noted that there was clear evidence of culpability on the part of the person sanctioned. *Brady*, 484 A.2d at 569–70. Here, by contrast, Arnold argues forcefully that, given an opportunity to present evidence as to whether she should be held liable for the fees of the successor guardian/conservator, she "would have demonstrated . . . her good faith in caring for Ms. Randolph–Bray in very trying circumstances, the lack of any alternative that would not have resulted in heavy costs to the estate, and various pressing family emergencies that interfered with her ability to file the required report on time."[7]

Moreover, it appears that Arnold received no compensation for her work as guardian and conservator (as distinguished from her work as hands-on caregiver), even though she might have been entitled to compensation for both. *See* D.C.Code § 21–2047(d) ("A guardian is entitled to reasonable compensation for services as guardian . . . as approved by order of the court . . . .") and D.C.Code § 21–2060(a) ("As approved by order of the court, any . . . conservator . . . or guardian is entitled to compensation for services rendered . . . in connection with a guardianship or protective arrangement. . . . Compensation shall be paid from the estate of the ward. . . ."). Thus, as she contends, she may have been able to show at an evidentiary hearing that even if her late-filings and any other breaches caused the estate some additional expense, that expense was

---

6. In pertinent part, the court's order setting a hearing directed "the fiduciaries, parties, interested persons and their counsel . . . [to] appear . . . to show cause why the Findings of Fact and Conclusions of Law and recommendations set forth within the Report of the Auditor Master should be adopted by the court. . . ."

7. *See* D.C.Code § 21–2074(b) ("The conservator is personally liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate *only if personally at fault*") (emphasis added).

no more than she saved the estate through her uncompensated service over nearly nine years.[8]

▮ A remand permitting Arnold a further opportunity to be heard might be in order were it not for the second reason why we conclude that the court improperly denied the motion for reconsideration. The second reason relates to the general principles that circumscribe a court's use of its equity powers.[9] It is "axiomatic," under the general principles of equity, that equitable relief may not be granted where the person seeking relief has a complete and adequate remedy at law. *Kakaes v. George Wash. Univ.*, 790 A.2d 581 (D.C. 2002) (quoting *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 184 (D.C. 1993)). Our case law recognizes that an aggrieved estate has a remedy at law—*i.e.*, the estate may seek damages—against a fiduciary for losses due to a breach of fiduciary duty. *See Elkins*, 692 A.2d at 912. Further, the statute governing conservatorships specifically prescribes how questions of liability between an estate and a conservator may be resolved. D.C.Code § 21–2074(d) provides that "[a]ny question of liability between the estate and the conservator personally may be determined in a proceeding for accounting, surcharge, or indemnification, or other appropriate proceeding or action." In light of these remedies available to the Randolph–Bray estate, there was no need for the Superior Court to invoke its equity powers to sanction Arnold.[10]

▮ There is an additional reason why reconsideration of the sanctions order was warranted. The court purported to impose liability on Arnold for "fees that were merely generated by the breach of her fiduciary duty." However, it appears that the court's sanctions order required Arnold to pay not only Kass's fees for services occasioned by the removal of Arnold (for example, Kass's efforts to obtain necessary financial documents from Arnold), but also Kass's fees for services that would have been chargeable to the estate regardless of deficiencies in Arnold's previous performance as fiduciary, such as for services occasioned by Randolph–Bray's

---

8. For this reason, it was particularly unreasonable for the trial court to rely on the rationale that instead of failing to perform her duties, Arnold should have resigned. Had she resigned, the estate would have found itself even sooner in the precise situation that the court sought to avoid through its sanction order: having to pay the fees of a successor guardian/conservator.

9. D.C.Code § 21–2002(a) provides that "[u]nless displaced by the particular provisions of this chapter [Chapter 20, pertaining to 'Guardianship' and 'Protective Proceedings'], the principles of law and equity supplement its provisions."

10. *Cf. In re C.W.*, 916 A.2d 158 (D.C.2007) (holding, in case where the Family Court, on the basis of briefs filed in a child welfare/neglect proceeding, effectively found the District liable for damages for negligence in overseeing foster parents' use of funds paid to them for the care of the foster child, that the court

could not lawfully "dispense with the norms of the adversarial process," such as sworn testimony and the opportunity to cross-examine witnesses, "to deprive [the District] of rights that [it] would enjoy as a matter of course" in the conventional forum of a civil trial).

The Superior Court relied on *Hendry v. Pelland*, 73 F.3d 397, 403 (D.C.Cir.1996), a case in which clients sued their former attorney for breaching the fiduciary duty of loyalty and sought to disgorge from him the legal fees that they had paid him for his representation. *Id.* at 399. The court cited *Hendry* for the proposition that "fee forfeiture reflects the decreased value of the tainted representation itself." But *Hendry* is inapposite for a number of reasons, perhaps the most significant being that Arnold earned no fees for her service as fiduciary that she could be required to forfeit.

death.[11] The court failed to consider this "material fact," Superior Court Probate Division Rule 430(a)(1), pointed out in Arnold's motion for reconsideration.

For all the foregoing reasons, the Superior Court abused its discretion in denying Arnold's motion for reconsideration of the January 9, 2006 sanctions order. Accordingly, we reverse the court's February 24, 2006 ruling denying the motion for reconsideration. We remand with instructions that the court vacate that portion of the January 9, 2006 Order that required Arnold to pay $6,014.56 to Kass as compensation and reimbursement for his services as successor guardian/conservator.

*So ordered.*

---

11. For example, Kass billed for his time to "review and edit ... suggestion of [Randolph–Bray's] death."

Moreover—although Arnold's brief does not take issue with the particular amount of Kass's fees that the court required her to pay—we note that we are unable to discern how the Superior Court arrived at the amount of $6,014.56 for which the court held Arnold liable. Kass's invoice for his fees as successor guardian/conservator was for the amount of $4,702.74. The trial judge did not explain why he held Arnold liable for an amount over $1,300 more than Kass's invoiced amount. Thus, "there was no discernible basis or reason given for [this portion of] the Court's order." Superior Court Probate Division Rule 430(a)(3).