**FOREST HEIGHTS BILTMORE HOTEL, Inc., a Delaware Corporation, Appellant,**

**v.**

**Nathan LUBAR, Appellee.**

**No. 1602.**

Municipal Court of Appeals for the District of Columbia.

Argued March 14, 1955.

Decided April 27, 1955.

Mark P. Friedlander, Washington, D. C., for appellant.

Charles P. Liff, Washington, D. C., with whom Harold J. Nussbaum, Washington, D. C., was on the brief for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Plaintiff, Forest Heights Biltmore Hotel, Inc., brought suit against Nathan Lubar, to recover a retainer fee on the ground that at the time his services were retained he represented as counsel one or more other persons whose interests were adverse to plaintiff. The jury returned a verdict for Lubar and plaintiff appeals.

The testimony was detailed and lengthy, covering some 400 pages, and we shall therefore state only the evidence necessary to a consideration of this appeal. Eight assignments of error are made, but we reach only one: the court permitting appellee to give narrative testimony on cross-examination, permitting him to make statements when objections were interposed and before ruling could be made thereon, and the failure of appellee to make responsive answers to the trial judge and interrogating counsel.

Appellant, hereinafter called Biltmore, was incorporated under the laws of Delaware for the purpose of erecting a hotel in Maryland. A contract was executed between Biltmore and the Master Guild, Inc., in March 1954, whereby Master Guild was to construct the hotel. Elmer W. Sarbacher signed the contract as president of Master Guild and Mary W. Royall signed as president of Biltmore. Upon the signing of the contract, $10,000 was advanced to Master Guild by Biltmore as evidence of good will but the construction of the hotel was never commenced. It was the contention of Biltmore that Mr. Lubar or his firm had represented Master Guild, its stockholders and principal officers, Mr. Sarbacher and one James Raskin before and after being retained by it and in doing so undertook to discharge conflicting duties.

During trial Mr. Lubar was called as a witness by Biltmore and upon numerous occasions in response to questions propounded by Biltmore began his answers with "I indicated * * *," "It was made clear * * *," "It was very clear * * *," etc. These were patently conclusions as appellee, an attorney, should have known and despite objections by interrogating counsel the witness was permitted to continue to testify in this manner. As a result the record reveals many unresponsive answers by appellee, as well as answers that contain incompetent and other objectionable testimony. Upon cross-examination by his own counsel this continued, only to a greater degree.

■ As cross-examination of appellee by his own counsel began, the question was raised as to the propriety of his testifying in narrative form. We are aware that the manner in which a witness gives his testimony, whether in narrative form or by question and answer, is primarily addressed to the sound discretion of the trial court,[1] and that where there is much factual data to be elicited it has been held that " * * * the line of demarcation between proper and improper cross-examination frequently becomes narrow and shadowy and rests somewhat in the sound discretion of the trial court." Pietch v. United States, 10 Cir., 110 F.2d 817, 821, 129 A.L.R. 563, certiorari denied 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414; see also Hockaday v. Red Line, 85 U.S.App.D.C. 1, 174 F.2d 154, 9 A.L.R.2d 601. Rulings on these questions will not be disturbed on appeal unless they have been prejudicial to the complaining party. Yet these are not blanket rules that should be applied haphazardly, but rather should depend on the particular situation presented to the trial court.

■ Here the witness, an attorney, was being cross-examined by his own counsel and was the defendant in the suit. It was therefore incumbent upon the trial court to cast a critical eye over the narration as it was elicited. Appellee, when opposing counsel objected to his testimony, repeatedly made statements and argued the point before the court could rule on the objection, with the result that there was much confusion and turmoil throughout the trial. Appellee's failure to make responsive answers to questions of the trial judge and counsel, his manner of volunteering statements and comments not requested of him, and his arguing the merits of objections made by counsel were patently improper and prejudicial to plaintiff's case.

It is well known that permitting a witness to testify in narrative form presents the occasion for certain inadmissible testimony especially hearsay, to be interjected into the proceeding and at least heard by the jury, although not ultimately allowed by the trial judge. Usually this happens with lay witnesses who are ignorant of technicalities of the law and thus are not aware of improper statements. However, such should not be the case of a witness who is an attorney and familiar with the ways of the courtroom.

It would serve no useful purpose to set out in greater detail the numerous occasions when instances of this character occurred, but it will suffice to say that the

---

1. 3 Wigmore, Evidence, § 767.

record as a whole revealed that the conduct of appellee on the witness stand was of such a nature as to confuse the issues and that appellant was entitled to have his motion for new trial granted.

Reversed.