James PIETRANGELO, II, Appellant,

v.

WILMER CUTLER PICKERING
HALE & DORR, LLP,
Appellee.

No. 11–CV–1067.

District of Columbia Court of Appeals.

Submitted Oct. 30, 2012.
Decided April 11, 2013.

James Pietrangelo, II, pro se.

Gerson Zweifach, Ellen Oberwetter, and Marcus Smith, Washington, were on the brief for appellee.

Before BLACKBURNE–RIGSBY and EASTERLY, Associate Judges, and SCHWELB, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

Appellant James E. Pietrangelo, II, a licensed attorney acting *pro se,* brought an action for legal malpractice and an array of other alleged wrongs against appellee Wilmer Cutler Pickering Hale & Dorr, LLP (hereinafter "WilmerHale") for conduct related to WilmerHale's *pro bono* representation of Pietrangelo and others in a challenge to the since-repealed "Don't Ask, Don't Tell" (DADT) statute,[1] which regulated the treatment of gays in the military. Pietrangelo's complaint contains twenty-three separate counts. Judge Thomas J. Motley dismissed twenty of these counts for failure to state a claim for which relief can be granted, and Judge Joan Zeldon subsequently granted summary judgment in favor of WilmerHale with respect to one more count. Following a trial before Judge Zeldon, the jury found for Wilmer-Hale as to the remaining two counts.

On appeal, Pietrangelo identifies thirty-three points of error. He challenges virtually every ruling adverse to him, and presents claims which are discussed below and which, in our view, range from arguable to patently frivolous. WilmerHale responds by contending, first, that we need not reach the merits of Pietrangelo's individual claims because the suit should be dis-

---

**1.** 10 U.S.C. § 654 (2006), *repealed by* Don't Ask, Don't Tell Repeal Act of 2010, Pub.L. No. 111–321, 124 Stat. 3515.

missed on the basis of what it describes as Pietrangelo's perjury, fraud upon the court, and repeated acts of contempt. In the alternative, WilmerHale argues that none of the trial court rulings complained of by Pietrangelo constitute reversible error.

We agree with WilmerHale that Pietrangelo's conduct in this case and at trial was a shocking abuse of the judicial system, such that dismissal of the case pursuant to Super. Ct. Civ. R. 41(b) would not have been an abuse of discretion by the trial judge.[2] Given the fact that Pietrangelo is an attorney, his actions are all the more disturbing. Recognizing our oft-stated preference for trial on the merits, however, the trial judge declined (with obvious and explicitly stated reluctance) to dismiss the action and we therefore also address the merits of Pietrangelo's arguments on appeal. Discerning no reversible error, we affirm. But that there may be no misunderstanding, we make clear that this court will protect the process of an orderly trial and respect for the trial court's orders. Where a party engages in contumacious behavior, utterly inconsistent with the orderly administration of justice, such as Pietrangelo did here, dismissal is an appropriate sanction within the exercise of the trial court's discretion.

### I. Factual Background

On September 15, 2009, Pietrangelo filed a twenty-three count amended complaint against WilmerHale. The complaint contained various allegations arising from WilmerHale's *pro bono* representation of Pietrangelo and eleven other former armed service members in a challenge to the DADT statute. WilmerHale filed the DADT challenge in the United States District Court for the District of Massachusetts in 2004. Stuart Delery was WilmerHale's lead attorney on the case. The attorney-client relationship between Pietrangelo and WilmerHale began in 2004 and continued until 2006 when the Massachusetts federal district court dismissed the DADT challenge. *See Cook v. Rumsfeld,* 429 F.Supp.2d 385 (D.Mass.2006).

In May 2006, following the dismissal of his case by the federal district court, Pietrangelo decided to proceed *pro se* with the DADT challenge. Pietrangelo sought the legal advice of Harvard Law Professor Lawrence Tribe, but Professor Tribe did not represent Pietrangelo in court. As part of his self-representation, Pietrangelo filed a motion for reconsideration with the Massachusetts federal district court, which the court denied in an unreported decision. He then filed his notice of appeal and merits brief with the United States Court of Appeals for the First Circuit. The other eleven plaintiffs, who were still represented by WilmerHale, also appealed to the First Circuit. The First Circuit affirmed the district court's decision in 2008. *Cook v. Gates,* 528 F.3d 42, 65 (1st Cir. 2008). Thereafter, Pietrangelo filed a petition for a writ of certiorari with the United States Supreme Court. On June 8, 2009, the Supreme Court denied certiorari. *Pietrangelo v. Gates,* — U.S. —, 129 S.Ct. 2763, 174 L.Ed.2d 284 (2009).

Pietrangelo claims that he agreed to postpone filing his petition for certiorari to give WilmerHale additional time to file its own petition on behalf of the other eleven plaintiffs in exchange for WilmerHale agreeing to allow him to use its appendix if WilmerHale filed its own petition, thereby saving Pietrangelo the cost of having to print one. Specifically, Pietrangelo claims

---

**2.** In saying this, we do not mean to imply that the trial judge abused her discretion by declining to dismiss the action.

that WilmerHale agreed to inform him by November 25, 2008, if it "was definitely not going to file its own [petition]." Additionally, he alleges that WilmerHale represented to him that, if it did not inform him otherwise, he "could assume that Wilmer-Hale was going to file a petition," and he could have his own petition printed with references to WilmerHale's expected appendix. Pietrangelo asserts that he delayed filing his petition in reliance on this verbal agreement but that WilmerHale failed to inform him that it was not going to file a petition until December 29, 2008. Since Pietrangelo had already printed his petition containing record citations to the appendix that he expected WilmerHale would be filing, he had to reprint his petition to reference his own appendix, which cost $432.50. The crux of Pietrangelo's claim is his contention that WilmerHale did not want him to appeal to the Supreme Court and, therefore, it never intended to file a petition for certiorari and deliberately delayed informing him in an attempt to trick him into missing the filing deadline.

After Pietrangelo filed his petition with the Supreme Court, WilmerHale filed a response brief on behalf of the eleven other plaintiffs. The response brief supported Pietrangelo's argument on the merits but argued that "the Court would be better advised to defer review at this time." WilmerHale and its clients alleged that they took this position because they believed a favorable outcome was unlikely given the composition of the Supreme Court and that another case proceeding in the Ninth Circuit might be a better vehicle for Supreme Court review. After Wil-

merHale filed the response brief, Pietrangelo asked WilmerHale to withdraw the brief because it opposed the relief he sought. When WilmerHale initially refused, Pietrangelo informed WilmerHale that he would file bar complaints against WilmerHale attorneys for violating their duties of loyalty and confidentiality to him.[3] The following day, Pietrangelo claims that Professor Tribe contacted him at WilmerHale's request and advised him not to file the bar complaints. Pietrangelo claims that he had contacted Professor Tribe and established an attorney-client relationship so that Tribe could assist him in the appellate challenges to DADT.[4] Further, Pietrangelo claims that Wilmer-Hale and Professor Tribe exchanged Pietrangelo's confidential client information without his consent.

Generally, the claims in Pietrangelo's amended complaint were that WilmerHale had wronged him by: (1) filing its brief opposing his petition for certiorari on behalf of the eleven other plaintiffs in the United States Supreme Court (Counts 1–4); (2) interfering with the attorney-client relationship he had formed with Professor Tribe and exchanging confidential information with Tribe (Counts 5–11); (3) breaching an alleged agreement with Pietrangelo that, if he would delay filing his petition for certiorari, he could use WilmerHale's appendix if WilmerHale filed its own petition (Counts 12–15); and (4) committing legal malpractice in drafting the complaint for the DADT challenge (Counts 16–19). The four remaining claims (Counts 20–23), which were based on the alleged wrongs underlying the first nineteen claims, in-

3. WilmerHale withdrew the pleading and withdrew from further representation of the eleven other plaintiffs; the other plaintiffs ultimately filed their pleading through another law firm.

4. Pietrangelo never alleges a retainer agreement, written contract, or any other facts demonstrating the existence of such an agreement with Tribe. Additionally, in his amended complaint, Pietrangelo states: "Ultimately, though, Prof[essor] Tribe did not represent [Pietrangelo] in court."

cluded intentional infliction of emotional distress, unfair trade practices, bad faith, and conspiracy.

Pietrangelo's overarching allegation was that WilmerHale entered into an agreement with "the Obama Camp" to throw the DADT challenge "in exchange for substantial inducements, including positions for WilmerHale partners and attorneys within the new administration[,] favorable action for WilmerHale clients in future administrative proceedings before the administration, and White House [p]olitical access."

Following the filing of Pietrangelo's amended complaint in D.C. Superior Court, WilmerHale filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. On August 2, 2010, the trial court dismissed twenty of the twenty-three counts pursuant to Super. Ct. Civ. R. 12(b)(6). Discovery followed on the three surviving counts. These counts related to whether WilmerHale breached the alleged agreement to notify Pietrangelo by November 25, 2008, as to whether it would file a petition for certiorari and appendix in the Supreme Court. Following the close of discovery, WilmerHale moved for summary judgment on one of the three remaining counts, which the trial court granted. The case then proceeded to a jury trial on the two surviving counts on July 18, 2011. After a three day trial, the jury found in favor of WilmerHale on both counts. This appeal followed.

We first address, in Part II of this opinion, Pietrangelo's contemptuous behavior before the trial court. We then consider, in Part III of this opinion, Pietrangelo's claims that the trial court improperly dismissed Counts 1–11, 15–19, and 21–23 pursuant to Super. Ct. Civ. R. 12(b)(6). In dismissing these counts, the trial court concluded that the facts alleged in the amended complaint were insufficient and

often just mere conclusory allegations. The dismissed claims ranged from legal malpractice to conspiracy, but all revolved around Pietrangelo's contention that WilmerHale intentionally impeded the success of the DADT challenge in order to gain political favor with the Obama Administration. Next, we address in Part IV of the opinion whether the trial court properly granted summary judgment to WilmerHale on Count 12 of the amended complaint and whether it properly denied summary judgment to Pietrangelo on Counts 13 and 14. The trial court granted summary judgment to WilmerHale on Count 12 because it concluded that, even viewing the evidence in the light most favorable to Pietrangelo, he failed to produce evidence to support a prima facie case. The trial court did not "deny" summary judgment to Pietrangelo on Counts 13 and 14 because Pietrangelo did not move for summary judgment on those counts. Lastly, in Part V of the opinion, we address Pietrangelo's challenges to a number of the trial judge's rulings, which related to issues such as discovery, the scope of witness examination, and jury instruction.

## II. Pietrangelo's Contemptuous Behavior

■ Pietrangelo availed himself of the District of Columbia courts to obtain relief for alleged wrongs. In pursuit of those claims, he engaged in litigation that consumed substantial resources in the trial court, resulting in a docket sheet with over 300 entries in two years. The trial court made painstaking efforts to provide a fair trial, investing substantial court and judicial resources. But after demanding and receiving substantial time and attention from the trial court, Pietrangelo's attitude in return was one of flagrant contempt, whereby he deliberately disregarded orders of the trial court and exhibited an attitude of disrespect to the trial judge and

the administration of justice. This is particularly troubling because Pietrangelo is himself an attorney.

Pietrangelo first testified falsely, denying authorship of an email originating from his email account to WilmerHale. The email, dated December 3, 2008, contradicted Pietrangelo's allegation that Wilmer-Hale promised to notify him by November 25, 2008, if it would not be filing a petition for certiorari. In the email, Pietrangelo wrote to Stuart Delery:

> I went ahead and had my booklet printed already, so I just wanted to confirm with you that you will be filing a petition on behalf of your clients. If you won't, I need to take some additional steps. Additionally, could you please just let me know on what day you think you will be filing your clients' petition, if you do file one, so that I may file contemporaneously.

Pietrangelo initially denied sending the email.[5] WilmerHale then confronted Pietrangelo with his bar complaint, to which Pietrangelo had attached the very same email. At that point, Pietrangelo refused to answer any questions, claiming that his complaint to Bar Counsel about Wilmer-Hale was confidential.[6] WilmerHale received the same response when it attempted to confront Pietrangelo with other emails that Pietrangelo had also attached to his bar complaint.

Pietrangelo's flagrant behavior continued, even when the trial court intervened:

**The Court:** I have ruled that this document, as redacted, is admissible in this court proceeding, and I instruct you to answer his questions. You have objected and your objection is noted for the record.

**Pietrangelo:** Respectfully, Your Honor, I decline to answer under Court of Appeals Rule 17 and 19.[7]

**The Court:** So you are not going to answer the question?

**Pietrangelo:** Not under my objection, Your Honor, no.

Pietrangelo then refused to comply with repeated orders of the court to answer questions about the emails he attached as exhibits to his bar complaint. The court noted, "for the record, this is extremely unusual, that a witness will not answer a question when a judge has overruled his objection because he thinks his objection should prevail and will not respect the ruling of the court."

In response to Pietrangelo's contumacious disregard of the trial judge's orders, the judge asked the jury to step into the jury room and then took a moment to explain to Pietrangelo the seriousness of his refusal to comply with the court's orders.

**The Court:** I want you to hear all this and think about it, because it's a very important crossroads for you in this case. I mean, what you're doing is, if you decide to proceed in this matter, you risk, I will dismiss the case, it will be over today, as a sanction for your refus-

---

5. Although Pietrangelo denied sending the email, he admitted that the email account had belonged to him since 2005, that he continued to use it, and that it was the same email address he used to communicate in this case.

6. Prior to trial, Pietrangelo unsuccessfully moved to strike from the record any references to his bar complaint. Pietrangelo then sought mandamus relief with this court to

exclude any use of the bar complaint in the trial court, which we denied.

7. Pietrangelo probably meant to refer to D.C. Bar Rule XI, § 17(a), which provides for confidentiality of bar proceedings, and D.C. Bar Rule XI, § 19(a), which grants a privilege to complaints made to Bar Counsel. D.C.App. R. 17 and D.C.App. R. 19 relate to review of orders of administrative agencies.

al, for your contempt, which is in the presence of the Court. I don't want to do that. I prefer for this dispute to be aired before a jury and resolved finally by a jury. But you cannot shield yourself from conduct that is admissible in this trial after I ruled that it was admissible. So you have a choice to make. Do you need five minutes to think this over, or have you already decided that you're not going to do this?

**Pietrangelo:** I don't need a second, Your Honor.

The judge offered Pietrangelo one chance to reconsider, to which Pietrangelo responded: "I maintain my objections and refusal." When the jury was brought back, WilmerHale continued its cross-examination and Pietrangelo refused to answer no fewer than twenty-one questions, all of which the trial court ordered him to answer.

The judge again excused the jury and WilmerHale moved to dismiss the case for Pietrangelo's contempt pursuant to Super. Ct. Civ. R. 41(b). After argument by the parties, the judge declined to dismiss the case. Although she believed dismissal would be "the right thing," she said that she was looking for finality and recognized this court's "preference for resolution of disputes on the merits." Instead, as a sanction, the court instructed the jury that it could conclude that any testimony Pietrangelo would have given about his bar complaint would have been unfavorable to his case.

 Where a party " 'engage[s] in conduct utterly inconsistent with the orderly administration of justice,' " we have recognized that dismissal is an appropriate sanction. *Synanon Found., Inc. v. Bernstein*, 503 A.2d 1254, 1264 (D.C.1986) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir.1983)). Indeed, while "[d]ismissal is an extreme

sanction which should be granted only sparingly or in extraordinary circumstances," *District of Columbia v. Serafin*, 617 A.2d 516, 519 (D.C.1992), the trial court has authority to dismiss an action when a plaintiff fails to comply with an order of the court, *LaPrade v. Lehman*, 490 A.2d 1151, 1155 (D.C.1985) (citing Super. Ct. Civ. R. 41(b)). Here, Pietrangelo's refusals to comply with the trial court's orders were contemptuous of judicial authority because they were intentional obstructions of court proceedings that disrupted the progress of the trial and hence the orderly administration of justice. *See United States v. Wilson*, 421 U.S. 309, 314–15, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975) (explaining that refusal to answer after lawful orders, even when not delivered disrespectfully, constitutes contemptuous conduct).

 Pietrangelo attempts to rationalize his behavior by collaterally challenging the trial judge's ruling; however, his remedy for what he believed to be error by the trial court was not by flagrant disregard of lawful orders from the bench. *Cf. Sacher v. United States*, 343 U.S. 1, 9, 72 S.Ct. 451, 96 L.Ed. 717 (1952) (noting that, after an adverse ruling on an objection, "it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal"). "The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, [the contempt power is and] must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify." *Wilson, supra*, 421 U.S. at 316, 95 S.Ct. 1802 (footnote and citation omitted). Whether such incentive is necessary in a particular case, of course, is a matter wisely left to the discretion of the

trial court. In this case, although the trial judge declined to dismiss the action out of an abundance of caution, she would have acted well within her discretion to impose such a sanction.

### III. Trial Court's Dismissal of Counts 1–11, 15–19, and 21–23 Pursuant to Super. Ct. Civ. R. 12(b)(6)

Pietrangelo appeals the trial court's dismissal of Counts 1–11, 15–19, and 21–23 for failure to state a claim pursuant to Super. Ct. Civ. R. 12(b)(6).

#### A. Standard of Review

■■■ We review the trial court's decision to dismiss a complaint for failure to state a claim *de novo*. *Grayson v. AT & T Corp.*, 15 A.3d 219, 228 (D.C.2011) (en banc) (citation omitted). We construe the complaint in the light most favorable to the plaintiff by taking the facts alleged in the complaint as true. *In re Curseen*, 890 A.2d 191, 193 (D.C.2006). Furthermore, "[t]he only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint; and a complaint should not be dismissed because a court does not believe that a plaintiff will prevail on [his] claim." *Grayson, supra*, 15 A.3d at 228–29 (alteration in original) (citation and internal quotation marks omitted).

■■■ To determine whether a complaint is legally sufficient, we look to Super. Ct. Civ. R. 8(a), which "sets forth the minimum requirements for pleading a claim for relief." *Bolton v. Bernabei & Katz, PLLC*, 954 A.2d 953, 963 (D.C.2008) (internal quotation marks omitted). "All that is required when we consider the sufficiency of the complaint is 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Curseen, supra*, 890 A.2d at 193–94 (quoting Super. Ct. Civ. R. 8(a)(2)). Neverthe-

less, a complaint must tender more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 & n. 4 (D.C.2011) (adopting the plausibility standard articulated in *Twombly* and *Iqbal* (citing *Mazza v. Housecraft, LLC*, 18 A.3d 786 (D.C.), *vacated as moot*, 22 A.3d 820 (D.C.2011) (per curiam))). That is, "factual allegations must be enough to raise a right to relief above the speculative level." *Clampitt v. Am. Univ.*, 957 A.2d 23, 29 (D.C.2008) (brackets omitted) (quoting *Twombly, supra*, 550 U.S. at 555, 127 S.Ct. 1955). Ultimately, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Potomac Dev. Corp., supra*, 28 A.3d at 544 (citations and internal quotation marks omitted).

#### B. Dismissed Counts

With these principles in mind, we are confident, upon our review of the record, that the trial court did not err in dismissing Counts 1–11, 15–19, and 21–23 for failure to state a claim.

#### 1. Claims Related to WilmerHale's Filing of Its Brief Opposing Pietrangelo's Petition for Certiorari

■■■ Count 1 of the amended complaint alleges that WilmerHale breached its fiduciary duty to Pietrangelo by filing a brief in the United States Supreme Court that opposed his petition for a writ of certiorari. Here, the amended complaint, which seeks compensatory damages, fails to state a claim because it does not allege facts from which proximate cause and inju-

ry can be inferred. *See Hendry v. Pelland,* 315 U.S.App.D.C. 297, 302, 73 F.3d 397, 402 (1996). Pietrangelo alleges that, "but for" WilmerHale's filing, the Supreme Court would have granted certiorari, found in his favor on the merits, and remanded the case to the federal district court, which would have ordered Pietrangelo's reinstatement into the military. This alleged outcome is predicated upon mere speculation. *See Clampitt, supra,* 957 A.2d at 29. Even viewing Pietrangelo's factual allegations regarding WilmerHale's misconduct as true, he cannot demonstrate that "but for" WilmerHale's filing he would have achieved such a result. We have declined to find proximate cause where we would have to speculate about a legal result. *See, e.g., Chase v. Gilbert,* 499 A.2d 1203, 1211–12 (D.C.1985). Such compound speculation is insufficient as a matter of law to support a claim for breach of fiduciary duty, and dismissal of Count 1 was proper.[8]

### 2. Claims Based on WilmerHale's Communication with Professor Tribe

■ In Counts 5 and 6, Pietrangelo alleges that WilmerHale invaded his privacy by exchanging confidential information with Professor Tribe because he had an attorney-client relationship with both WilmerHale and Tribe. Without an allegation that the personal information involved here was accessed or publicly disclosed, an essential element of the tort, Pietrangelo has failed to state a claim for invasion of privacy. *See Randolph v. ING Life Ins. & Annuity Co.,* 973 A.2d 702, 711–12 (D.C.

2009). Accordingly, we affirm the dismissal of Counts 5 and 6.

In Count 7, Pietrangelo alleges that WilmerHale breached its fiduciary duty by disclosing secret and confidential information to Professor Tribe. Specifically, Pietrangelo identifies three types of confidential information that he alleges WilmerHale disclosed to Professor Tribe: (1) his intended bar complaint against WilmerHale; (2) his engagement agreement with WilmerHale; and (3) details of his "personal relationship with his significant other and other private information." The amended complaint fails to state a claim because it does not demonstrate that the information WilmerHale allegedly disclosed was confidential.[9]

■ Information that Pietrangelo planned to file a bar complaint against WilmerHale is not confidential. The ethics dispute arose after Pietrangelo terminated WilmerHale's representation and began to proceed *pro se,* meaning WilmerHale could not have acquired the information during the confidential relationship. *See, e.g., Herbin v. Hoeffel,* 886 A.2d 507, 508–09 (D.C.2005) (explaining that an attorney does not breach his or her fiduciary duty to former client where he or she does not use confidential information gained in the attorney-client relationship). Further, the existence and details of an engagement agreement are not ordinarily expected to be kept confidential when allegations arise concerning the agreement. *See* D.C. RULE OF PROF'L CONDUCT R. 1.6(e)(3). Finally, Pietrangelo does not allege that WilmerHale learned of his personal relationship

---

**8.** Pietrangelo's attempt in Counts 2, 3, and 4 to recast his breach of fiduciary claim as breach of contract claims fails. *See Biomet Inc. v. Finnegan Henderson LLP,* 967 A.2d 662, 670 n. 4 (D.C.2009) (citing *Burgess v. Pelkey,* 738 A.2d 783, 787 (D.C.1999)). Ac-

cordingly, we affirm the dismissal of Counts 2, 3, and 4.

**9.** We are not bound by Pietrangelo's legal conclusion that the information was confidential. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

with his significant other during the attorney-client relationship. Nor does he allege that such information was nonpublic. *See* D.C. RULE OF PROF'L CONDUCT R. 1.6 cmt. 10 ("[T]he fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about the former client when later representing another client."). Accordingly, we discern no error in the trial court's dismissal of Count 7.

In Count 8, Pietrangelo alleges that WilmerHale "inva[ded] [Pietrangelo's] attorney-client relationship with Prof[essor] Tribe and ... induce[d] disloyalty in Prof[essor] Tribe." Although titled differently, Count 9 essentially repeats the claim made in Count 8. According to Pietrangelo, Tribe breached his fiduciary duty to Pietrangelo, at WilmerHale's behest, by advising Pietrangelo not to file a bar complaint against WilmerHale and by sharing Pietrangelo's *confidential information* with WilmerHale.

In an effort to comply with Rule 12(b)(6)s directive to view the complaint in the light most favorable to the plaintiff, the trial court recast Pietrangelo's claims in Counts 8 and 9 as tortious interference with contract claims and found that they failed to state a claim upon which relief can be granted. Pietrangelo appeals, claiming that the trial court misconstrued his amended complaint. In his appeal, Pietrangelo contends that his claims sufficiently alleged that WilmerHale induced Professor Tribe to breach his fiduciary duty. We affirm the judgment of the trial

court, though we do so on a different ground.[10]

In jurisdictions that have recognized the tort of aiding and abetting the breach of fiduciary duty,[11] the plaintiff must show: "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of this breach by the alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 592 F.Supp.2d 86, 94 (D.D.C.2009) (citations omitted). However, as we noted in *Flax v. Schertler*, "[t]he separate tort of aiding-abetting has not yet, to our knowledge, been recognized *explicitly* in the District." 935 A.2d 1091, 1107 (D.C.2007) (alteration in original) (emphasis added) (citation and internal quotation marks omitted). Nevertheless, in *International Underwriters, Inc. v. Boyle*, we explained that a third party may be liable for another's "alleged breaches of fiduciary duty if [the third party] can be shown to have induced this conduct." 365 A.2d 779, 784 (D.C.1976). But we need not decide here whether a cause of action exists in the District of Columbia for aiding and abetting the breach of fiduciary duty because Pietrangelo has not alleged sufficient facts establishing a breach of fiduciary duty by Professor Tribe.

A predicate to any liability based on a theory of an inducement of a breach of a fiduciary duty is the breach of fiduciary duty by the principal. *See Alleco Inc., supra* note 11, 665 A.2d at 1050. Here, even assuming the existence of a fiduciary relationship between Professor Tribe and

---

**10.** Where there will be no procedural unfairness, "we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge or raised or considered in the trial court." *In re Walker*, 856 A.2d 579, 586 (D.C.2004) (citation omitted). The requirement of procedural fairness is sat-

isfied here because the ground on which we rely was raised by appellant.

**11.** *See, e.g., Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 665 A.2d 1038, 1049–50 (1995) (collecting cases and authorities).

Pietrangelo and a breach thereof, Pietrangelo does not allege that he suffered any harm. *See Hendry, supra,* 315 U.S.App. D.C. at 302, 73 F.3d at 402 (observing that a plaintiff seeking compensatory damages must show injuries that were proximately caused by the breach of fiduciary duty). Accordingly, we affirm the dismissal of Counts 8 and 9.

Count 10 alleges that WilmerHale tortiously interfered with Pietrangelo's attorney-client relationship with Professor Tribe by communicating with Professor Tribe and by inducing him to breach his fiduciary duty to Pietrangelo. Count 11 purports to state a claim for "aiding and abetting breach of an advantageous contract/business relationship." Here, Pietrangelo relies upon his factual allegations in Count 9.[12] However, as discussed *supra,* Pietrangelo alleges no specific facts of harm in Count 9. Nor does the amended complaint allege elsewhere that Pietrangelo suffered any harm as a result of Tribes alleged failure to perform. Because harm is one of the material elements of a tortious interference claim, *Paul v. Howard University,* 754 A.2d 297, 308–09 (D.C. 2000), and Pietrangelo makes no allegation of harm, Count 10 fails to state a claim upon which relief can be granted. Consequently, we need not decide the viability of Pietrangelo's aiding and abetting claim in Count 11. *See Alleco Inc., supra* note 11, 665 A.2d at 1050. Accordingly, we affirm the dismissal of Counts 10 and 11.

### 3. Claim Related to WilmerHale's Communication with Pietrangelo Regarding Whether WilmerHale Would File a Petition for Certiorari

██ Count 15 of the amended complaint alleges that WilmerHale breached its fiduciary duty to Pietrangelo by promising to notify him by November 25, 2008, "if it decided definitely not to file [a brief in the Supreme Court]," when it neither intended to file a brief nor to inform him. Pietrangelo alleges that he entered into this agreement with WilmerHale in 2008, after he began to represent himself in the litigation in 2006. At the time Pietrangelo alleges that WilmerHale made these promises, WilmerHale no longer represented Pietrangelo and, therefore, it did not owe Pietrangelo a fiduciary duty with respect to this alleged agreement. Moreover, the other allegations in the amended complaint make clear that the alleged agreement was separate and distinct from WilmerHale's previous representation of Pietrangelo. Accordingly, we affirm the trial court's dismissal of Count 15.

### 4. Claims Based on WilmerHale's Representation of Pietrangelo in the DADT Challenge

██ In Count 16, Pietrangelo raises a legal malpractice claim pertaining to WilmerHale's representation of Pietrangelo in the DADT challenge at the United States District Court for the District of Massachusetts. He alleges that WilmerHale had an obligation to make two claims in the federal district court litigation: (1) a First Amendment "overbreadth claim"; and (2) an equal protection "systematic abuse" claim, in addition to the other First Amendment and equal protection claims that WilmerHale raised. Even if we were to assume that WilmerHale breached its duty of care to Pietrangelo by failing to include overbreadth and systemic abuse challenges to DADT in the federal district

---

12. We note that Counts 10 and 11 contain no factual allegations whatsoever. Both merely state: "See Ninth Claim."

court litigation, Pietrangelo does not allege sufficient facts showing causation or resulting non-speculative harm from Wilmer-Hale's breach of its professional duty. Pietrangelo's allegation that the federal district court, the United States Court of Appeals for the First Circuit, or the United States Supreme Court would have struck down DADT if WilmerHale had advanced the overbreadth and systematic abuse claims is purely speculative. *See, e.g., Chase, supra,* 499 A.2d at 1212. Accordingly, we affirm the dismissal of Count 16.[13]

### 5. Other Claims

■■ Count 21 alleges that WilmerHale, the Obama Administration, "and other parties maliciously and wrongly agreed and conspired to commit the above torts and in furtherance of that agreement did so commit the above torts, resulting in the harms to Plaintiff described above." Although Pietrangelo makes several conclusory statements that WilmerHale engaged in a conspiracy against him, he alleges no specific facts to support these assertions and, therefore, Count 21 fails to state a claim upon which relief can be granted. *See Paul, supra,* 754 A.2d at 310.

■■ Pietrangelo's claim in Count 22 for intentional infliction of emotional distress is based upon the cumulative allegations he makes in his amended complaint. Pietrangelo's claim of physical and emotional injury is based on WilmerHale's alleged disclosure of his confidential information to Professor Tribe. Assuming, without deciding, that an attorney could be held liable for intentional infliction of emotional distress based on the attorney's breach of the duty of confidentiality, the facts alleged in the amended complaint fail to demonstrate that the information WilmerHale allegedly disclosed was actually confidential. See discussion *supra* Count 7. As such, this conduct is insufficient to form the basis of his claim. Additionally, Pietrangelo relies on WilmerHale's filing of its brief to oppose certiorari by the Supreme Court to support his claim of emotional distress. This conduct is simply insufficient to establish liability under this tort theory. WilmerHale's alleged professional misconduct in this regard does not rise to the level of "outrageous" conduct as a matter of law. *See, e.g., Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) ("Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (citations and internal quotation marks omitted)). Accordingly, dismissal of Count 22 was proper.

■■ Count 23, the final dismissed count of Pietrangelo's amended complaint, alleges that WilmerHale's conduct violated the consumer protection statutes of New York and Massachusetts. *See* Mass. Gen. Laws ch. 93A § 2(a) (2004); N.Y. Gen. Bus. L. § 349 (McKinney 1999). The trial court, after applying choice of law rules, concluded instead that the law of the District of Columbia should be applied. Since the District of Columbia's Consumer Protection Procedures Act ("CPPA") specifically excludes from its purview the "professional services of ... lawyers," D.C.Code § 28–3903(c)(2)(C) (Supp.2012), the trial court dismissed this count. On appeal, Pietrangelo argues that the trial court erred in applying District of Columbia law because the consumer protection statutes of New York and Massachusetts

---

**13.** Counts 17, 18, and 19, which are essentially restatements of the failed malpractice claim in Count 16, fail for the same reason. *See O'Neil v. Bergan,* 452 A.2d 337, 342–43 (D.C. 1982); *Macktal v. Garde,* 111 F.Supp.2d 18, 22–23 (D.D.C.2000). Dismissal of these counts was therefore proper.

include the professional services of lawyers within their purview unlike the District of Columbia statute. Our review of the choice of law ruling is *de novo*. *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C.2006).

 To determine which jurisdiction's substantive law governs a dispute, we employ a modified governmental interests analysis. *Id.* Under this analysis, "the choice of law turns on which jurisdiction has the most significant relationship to the dispute, and which jurisdiction's policy would be more advanced by applying its law." *USA Waste of Md., Inc. v. Love*, 954 A.2d 1027, 1030–31 (D.C.2008) (footnotes and internal quotation marks omitted). As part of this analysis, we consider the four factors enumerated in the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145:

a) the place where the injury occurred;

b) the place where the conduct causing the injury occurred;

c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

d) the place where the relationship is centered.

*Washkoviak, supra*, 900 A.2d at 180 (citation omitted). "The Restatement factors help to identify the jurisdiction with the most significant relationship to the dispute, that presumptively being the jurisdiction whose policy would be more advanced by application of its law." *Drs. Groover, Christie & Merritt, P.C. v. Burke*, 917 A.2d 1110, 1117 (D.C.2007) (citation and internal quotation marks omitted). When both jurisdictions have an interest in applying their own laws to the facts of the case, a true conflict appears and the law of the forum will be applied unless the foreign state has a greater interest in the controversy. *See id.*

 In this case, the laws of New York and the District of Columbia are not in conflict. Since New York General Business Law § 349 only applies to matters affecting the consumer public at large and Pietrangelo's claim is based on disputes specific to his particular attorney-client relationship, it would produce the identical result as D.C. law. *See Kirk v. Heppt*, 532 F.Supp.2d 586, 591 (S.D.N.Y.2008); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744–45 (1995). The absence of a true conflict compels the application of District of Columbia law by default. *See Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C.1970). Therefore, we next determine whether Massachusetts or D.C. law applies.

 The laws of Massachusetts and the District of Columbia are in conflict. Under the Massachusetts Consumer Protection Act, a plaintiff may bring a claim against an attorney who acts unfairly or deceptively in the rendition of legal services. *Guenard v. Burke*, 387 Mass. 802, 443 N.E.2d 892, 896 (1982). Under the CPPA, which specifically excludes attorneys, a plaintiff may not. *See* D.C.Code § 28–3903(c)(2)(C). This distinction between Massachusetts and D.C. law demonstrates that the two laws are in conflict. *See Margolis v. U–Haul Int'l, Inc.*, 818 F.Supp.2d 91, 101 (D.D.C.2011). Accordingly, we must identify whether Massachusetts or the District of Columbia has a more significant relationship to the dispute by looking to the four Restatement factors.

Application of the Restatement factors indicates that the District of Columbia is the jurisdiction with the most significant relationship to this case. The injuries identified in the complaint occurred primarily in the District of Columbia. Moreover, the complaint focuses predominantly on alleged misconduct by WilmerHale at-

torneys located in the District of Columbia. The relationship between the parties, which arose by an engagement letter from WilmerHale's District of Columbia office, centered around the District of Columbia. In addition, Pietrangelo does not live in any of the jurisdictions in question. The only tie to Massachusetts is that the DADT challenge was filed there. The District of Columbia, therefore, has the more significant relationship to this dispute and a greater interest in the controversy. Because the CPPA specifically excludes the professional services of lawyers from its purview, D.C.Code § 28–3903(c)(2)(C), the trial court properly dismissed this count.

## IV. Trial Court's Grant of Summary Judgment to WilmerHale on Count 12 and Denial of Summary Judgment to Pietrangelo on Counts 13 and 14

 Pietrangelo appeals the trial court's grant of summary judgment to WilmerHale on Count 12, and he further claims that the trial court erred in denying summary judgment to him on Counts 13 and 14. These counts related to whether WilmerHale breached the alleged agreement to notify Pietrangelo by November 25, 2008, about whether it would file a petition for certiorari. Upon review of the record, we are satisfied that the trial court properly granted summary judgment to WilmerHale on Count 12 because Pietrangelo failed to adduce any evidence to support his claim. Lastly, with respect to Counts 13 and 14, we find Pietrangelo's contention without merit because the record reveals that Pietrangelo never moved for summary judgment on these counts.

## V. Trial Judge's Rulings

 Finally, Pietrangelo challenges many of the trial judge's discretionary trial management decisions. In particular, he appeals: (1) the denial of his discovery requests; (2) the denial of his motion to disqualify WilmerHale's counsel; (3) the denial of his request to testify in narrative form; (4) the limitation on the scope of his redirect examination of a witness; (5) the admission of certain evidence; (6) the denial of his request for a mistrial; and (7) the entry of judgment on the jury verdict. It is well established that trial courts have broad discretion to manage trials. *Johnson v. United States,* 398 A.2d 354, 362 (D.C. 1979). With respect to these challenges, we find that the trial court did not abuse its discretion.[14]

### 1. Denial of Discovery Requests

 Pietrangelo contends that the trial court denied him "meaningful discovery on his claims." First, he alleges that the trial court erroneously denied him discovery relevant to the claims dismissed pursuant to Rule 12(b)(6) because the trial court erred in dismissing those claims. Second, he asserts that the trial court erroneously granted WilmerHale's motion for a protective order, which limited his time to depose Stuart Delery, WilmerHale's lead attorney in the DADT challenge, to three hours and denied him the opportunity to depose Seth Waxman, another WilmerHale attorney on the case. Lastly, Pietrangelo contends that the trial court erroneously denied his request for an order enlarging the time for discovery.

---

14. Pietrangelo raises several other issues in a very perfunctory manner that we deem insufficiently developed for the court to address on appeal. *See McFarland v. George Washington Univ.,* 935 A.2d 337, 351 (D.C.2007) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation and internal quotation marks omitted)).

 "We review the trial court's discovery rulings for abuse of discretion." *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 809 (D.C.2003). "[I]t is proper to deny discovery of a matter that is relevant only to claims or defenses that have been stricken ... unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (footnote omitted). As discussed *supra* in Section II, Part A, dismissal of Counts 1–11, 15–19, and 21–23 was proper. Moreover, Pietrangelo does not address how the information sought in relation to his stricken claims would be relevant to his surviving claims. Thus, we discern no abuse of discretion.

 Pietrangelo's contention that the trial court erred in granting WilmerHale's motion for a protective order is also unpersuasive. The trial court may limit discovery of relevant materials when "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources and the importance of the issues at stake in the litigation." Super. Ct. Civ. R. 26(b)(1). Here, the trial court properly balanced those interests. In denying the request to depose Seth Waxman, the trial court found that Pietrangelo had "not adequately explained what role, if any, Seth Waxman played in connection with the remaining counts." Similarly, in limiting the deposition of Stuart Delery to three hours, the trial judge recognized that the nature of the case changed significantly following the dismissal of Counts 1–11 and 15–23. The trial judge stressed the "importan[ce] for all parties to focus on the remaining three counts" at issue in the case and explained that the deposition needed to be tailored to only those claims. In light of these facts, we discern no abuse of discretion, nor do we discern any appreciable possibility of prejudice. The interests of judicial economy and fairness to the parties support the trial court's decision here.

 Pietrangelo's contention that the trial court erred in denying his request for an order enlarging the time for discovery is unavailing. Given the wide latitude of a trial judge in overseeing discovery and the trial process, we cannot say that the trial judge's denial of Pietrangelo's request to enlarge the time for discovery was an abuse of discretion. It was well within the court's discretion to adhere to the time frames established at the beginning of the litigation process. *Mizrahi v. Schwarzmann*, 741 A.2d 399, 403 (D.C.1999) (citing Super. Ct. Civ. R. 16(b)(6)).

## 2. Denial of the Motion to Disqualify WilmerHale's Counsel

 Pietrangelo contends that the trial court erred in refusing to disqualify Gerson Zweifach, WilmerHale's outside counsel, and Bruce Berman, WilmerHale's general counsel, for violating ethical rules which forbid an attorney from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness, *see* D.C. RULE OF PROF'L CONDUCT R. 3.7, and which forbid an attorney from representing a client when the lawyer has a conflict of interest, *see* D.C. RULE OF PROF'L CONDUCT R. 1.7. Other than his allegation that these individuals learned information through the course of representing WilmerHale—which is the very nature of an attorney-client relationship—Pietrangelo fails to explain why these rules bar Zweifach and Berman from representing WilmerHale. We are unwilling to conclude the trial court abused its discretion in denying Pietrangelo's motion to disqualify. *See Derrickson v. Derrickson*, 541 A.2d 149, 152 (D.C.1988) ("[D]isqualification of an attorney is a matter which rests within

the sound discretion of the trial court and will not be overturned absent a showing of abuse." (citations omitted)).

### 3. Denial of the Request To Testify in a Narrative Form

■■■■ Pietrangelo argues that he had a "right" as a *pro se* litigant to testify in a narrative format, which the trial judge infringed upon by requiring him to testify in a question-and-answer format despite his request to testify in a narrative format. Although we require trial judges to "exercise special care with a *pro se* litigant in special circumstances," *Padou v. District of Columbia*, 998 A.2d 286, 292 (D.C.2010), we do not require trial judges to afford *pro se* litigants the automatic right to testify in narrative form. To prevail, therefore, Pietrangelo must establish that the ruling was an abuse of discretion.

■■■ The trial judge has broad discretion in managing the conduct of a trial, including the manner in which a witness gives testimony. *Forest Heights Biltmore Hotel, Inc. v. Lubar*, 113 A.2d 568, 569 (D.C.1955). The trial judge acted well within her discretion, especially given the contentious nature of the proceedings, in determining that orderly procedure required that WilmerHale be given an opportunity to object to Pietrangelo's testimony. Consequently, the ruling was not an abuse of discretion.

### 4. Limitation on Pietrangelo's Re–Examination of a Witness

■■■ Pietrangelo claims that the trial judge erred in limiting his re-examination of Stuart Delery. At trial, Pietrangelo called Delery as his first witness. The court permitted Pietrangelo to ask Delery leading questions.[15] Thereafter, Wilmer-Hale cross-examined the witness. Follow-

ing WilmerHale's cross-examination, the trial judge limited Pietrangelo's further questioning of Delery to redirect. Without providing any legal analysis or reason, Pietrangelo concludes that this limitation was "per se error."

■■ The trial judge has extensive discretion in controlling the examination of witnesses. *In re D.S.A.*, 283 A.2d 829, 831 (D.C.1971). Traditionally, courts have limited the scope of redirect examination to subject matter brought out on cross-examination. *Brown v. United States*, 763 A.2d 1137, 1140 (D.C.2000). Here, there was nothing unusual about the mode and order of examining Delery employed by the trial court. Rather, allowing Pietrangelo to cross-examine the witness following WilmerHale's cross-examination would have been out of the ordinary. Nor did the court err in declining to permit redirect to go beyond the scope of WilmerHale's cross-examination. *See id.* Furthermore, the judge explicitly warned Pietrangelo not to hold back from asking any questions necessary to prove his case because the scope of his redirect would be limited. For these reasons, we discern no abuse of discretion.

### 5. Admission of WilmerHale's Offer of Compromise to Pietrangelo into Evidence

■■■ Shortly before trial, on May 16, 2011, WilmerHale sent by mail a payment in the amount of $475 to Pietrangelo to cover his claimed damages for having to reprint his petition for certiorari along with a letter denying any wrongdoing. Pietrangelo refused to accept the payment. When the case went to trial, WilmerHale sought to introduce evidence of its offer in order "to explain why a trial over such a small amount of money was happening."

**15.** The judge explained: "You're allowed to ask [Delery] leading questions, because I will presume that he is a hostile witness."

Pietrangelo challenged the introduction of this evidence, as he does on appeal, arguing that the law of evidence excludes offers to compromise a disputed claim. Finding that exclusion might prejudice Wilmer-Hale, the trial judge admitted the evidence of WilmerHale's offer to Pietrangelo.[16]

We review a trial court's evidentiary rulings for abuse of discretion. *Johnson v. United States,* 960 A.2d 281, 294 (D.C.2008) (citation omitted). We need not decide whether WilmerHale's letter and accompanying payment constituted a settlement offer because, even if we assume *arguendo* that it was, Pietrangelo's challenge fails. "[A]s a general rule, statements and admissions made by a party during the course of settlement negotiations are not admissible at trial." *Lively v. Flexible Packaging Ass'n,* 930 A.2d 984, 994 (D.C.2007). "This exclusionary rule, however, is for the offeror's benefit." *Joyner v. Jonathan Woodner Co.,* 479 A.2d 308, 312 n. 5 (D.C.1984) (explaining that the offeror may voluntarily waive the protections of this rule). Here, by inquiring into the compromise offer that it had made to Pietrangelo, WilmerHale voluntarily waived the protections of this rule. Pietrangelo has no basis for contesting that waiver. Accordingly, we find no basis for reversal in the trial court's ruling.

### 6. Admission of Pietrangelo's Bar Complaint Regarding WilmerHale into Evidence

Pietrangelo argues that the trial court erred by denying his motion to exclude from evidence a redacted version of his sworn April 7, 2009 bar complaint letter and its accompanying exhibits to D.C. Bar Counsel regarding WilmerHale attorneys, which WilmerHale introduced in its defense to impeach Pietrangelo. Pietrangelo contends that the bar complaint was inadmissible under D.C. Bar Rule XI, § 17(a), which provides for confidentiality of bar proceedings, and D.C. Bar Rule XI, § 19(a), which grants a privilege to complaints made to Bar Counsel. We discern no abuse of discretion in the trial court's ruling because, even if a bar complaint made to Bar Counsel is confidential,[17] D.C. Bar Rule XI, § 17(a) gives the court authority to otherwise order disclosure. In addition, D.C. Bar Rule XI, § 19(a) lends no support to Pietrangelo's position.[18] WilmerHale used the bar complaint letter in its defense, not to institute or maintain any claim or action. *See In re Spikes,* 881 A.2d 1118, 1123 (D.C.2005) ("The consistent decisional law of this court has held that D.C. Bar Rule XI, § 19(a) prohibits a litigant from maintaining a cause of action based on an ethical complaint to Bar Counsel."). As such, we find Pietrangelo's contention without merit.

### 7. Denial of the Request for a Mistrial

At the conclusion of trial, following a note that the jury had reached a verdict, the trial judge received another juror note. The second juror note read:

---

16. The trial judge stated: "If I didn't allow that in, then I am preventing—the jury will go back there and say, why don't they just give him the $432.50? This is a big, rich law firm ... and they wouldn't give this poor guy $432.50. That would be prejudicial to [WilmerHale]."

17. We previously declined to address whether a complaint made to Bar Counsel should be treated as confidential under D.C. Bar Rule XI, § 17(a). *See In re Cooper,* 936 A.2d 832, 834–35 (D.C.2007).

18. In relevant part, the rule provides: "Complaints submitted to the Board or Bar Counsel shall be absolutely privileged, and no claim or action predicated thereon may be instituted or maintained." D.C. Bar R. XI, § 19(a).

"Judge—I am concerned as a nurse about Mr. [Pietrangelo's] mental health[.] I feel he needs support [and] help." Upon receiving the note, the judge asked the parties to approach the bench to discuss the matter. After showing the note to the parties, the judge then asked, "Do you think I need to answer this?" Neither party answered. After taking a few moments to consider the note, Pietrangelo moved for a mistrial, which the trial judge denied without further inquiry.

On appeal, Pietrangelo argues that the trial judge erred in denying his request for a mistrial. In particular, he contends that the trial judge failed to make an inquiry into the meaning of the note. He asserts that those with an antipathy toward homosexuality believe it is a mental health problem and, therefore, the juror's note about his mental health "indicated bias" because Pietrangelo is gay, which the jury knew from his testimony. Pietrangelo also asserts that the juror's note indicated "extrinsic influence" because Pietrangelo's mental health was not at issue during the trial.

"[T]he determination of juror bias or prejudice lies particularly within the discretion of the trial court, reversible only for a clear abuse of discretion. . . ." *Washington v. Wash. Hosp. Ctr.*, 579 A.2d 177, 185 (D.C.1990). Although certain instances may require a hearing, "[a] trial judge, of course, does not need to engage in an inquiry when an allegation of bias or reliance on extrinsic evidence is speculative." *Garrett v. United States*, 20 A.3d 745, 749 (D.C.2011).

We are not persuaded that the trial judge abused her discretion by denying Pietrangelo's motion for a mistrial and declining to investigate the juror's note. The trial judge gave Pietrangelo the opportunity to explore this matter further at the bench conference and he declined to do so.

Pietrangelo made no mention of his concern of bias or reliance on extrinsic evidence to the trial judge; he raises these claims for the first time on appeal. Given the circumstances, the trial judge handled the matter sensitively and correctly, particularly because asking the juror about the note risked calling undue attention to the matter. *See United States v. Butler*, 262 U.S.App.D.C. 129, 134, 822 F.2d 1191, 1196 (1987) ("[T]he trial judge has broad discretion to fix the exact procedures by balancing the need to make a sufficient inquiry against the concern that the inquiry not create prejudicial effects by unduly magnifying the importance of an insignificant occurrence."). In addition, the likelihood of Pietrangelo's interpretation being valid is belied somewhat by the fact that the trial judge asked the prospective jurors about any bias regarding homosexuality during *voir dire*. Accordingly, we discern no abuse of discretion.

### 8. Entering Judgment on the Jury Verdict

 Pietrangelo argues for the first time on appeal that the jury verdict was not unanimous because Juror No. 1 found in his favor during the jury poll. The verdict form indicated that the jury reached a unanimous decision in favor of WilmerHale. After the jury returned its verdict, the following exchange occurred:

**The Court:** And is that the verdict of each and every one of you?

**Foreperson:** Yes, it is.

**The Court:** I will poll this jury. Please have a seat.

**The Court:** Juror No. 1?

**Juror:** Yes.

**The Court:** No. 2?

**Juror:** No—I'm sorry.

**The Court:** Both of you—let's start again. I'm going to—just be very thorough, question No. 1, juror No. 1?

**Juror:** Yes.

**The Court:** Question No. 2, juror No. 1?

**Juror:** Yes.

**The Court:** Juror No. 2, question No. 1?

**Juror:** No.

**The Court:** Question No. 2?

**Juror:** No.

The remaining jurors answered "no" like Juror No. 2. Pietrangelo points out that Juror No. 1 provided a different answer than the other jurors. Pietrangelo did not object to the unanimity of the jury at trial, including when the trial judge completed the polling and said: "I have polled the jury; it is a unanimous decision." Therefore, we review for plain error.[19]

We do not find plain error on the present record. As in *Johnson v. United States*, the colloquy "in cold print is susceptible of different interpretations." 470 A.2d 756, 760 (D.C.1983) (holding that there was no error, for plain error purposes, by the trial court in its appraisal of the jury verdict where a juror provided an ambiguous answer) (quoting *Jackson v. United States*, 128 U.S.App.D.C. 214, 216, 386 F.2d 641, 643 (1967) (reaching same conclusion)). Although Juror No. 1's response could indicate that the juror disagreed with the verdict, it could also mean that Juror No. 1 said "yes" to express agreement with the verdict.

▇▇ To determine which of these meanings should be ascribed, "one must consider the juror's demeanor and the tone and pattern of his speech" and the trial judge is, of course, in a "much better position to evaluate these factors than is an appellate tribunal." *Johnson, supra,* 470 A.2d at 760. Here, the trial judge indicated her understanding that the juror's response was in agreement with the verdict by continuing to poll the jury and declaring thereafter "it is a unanimous decision." The record indicates that the response by Juror No. 1 elicited no reaction from either party. The silence on the part of Pietrangelo, "who certainly must have given full attention to the jury poll, strongly supports the reasonableness of the trial judge's perception." *Id.* We are not persuaded that, in light of what is before us, we must disregard the trial judge's unchallenged observation and first-hand assessment that the jury verdict was unanimous. Consequently, no plain error occurred.

## VI.

In conclusion, we are satisfied that the trial court gave Pietrangelo a full and fair opportunity to bring his case before the court. We affirm the trial court's dismissal of Counts 1–11, 15–19, and 21–23 for failure to state a claim for which relief can be granted. We also affirm the trial court's grant of summary judgment to WilmerHale on Count 12. We reiterate here, though, that there is no bar to imposing the ultimate sanction of dismissal when the court is faced with a long and continuing disobedience of its orders. Indeed, where the record reflects a deliberate and contumacious disregard of the court's authority, as it does in this case, we will not hesitate in affirming the trial court's discretionary decision to dismiss as a sanction.

---

19. Under the plain error standard of review, an appellant must demonstrate that the "objectionable action was (1) error, (2) that was plain, (3) that affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Juvenalis v. District of Columbia,* 955 A.2d 187, 192 (D.C.2008) (citations, internal quotation marks, and brackets omitted).

Wherefore, the judgment of the trial court is

*Affirmed.*

J.J., Appellant,